## Case No. 6,182.

### HARVEY v. RICHARDS.

[2 Gall. 216.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1814.

PROBATE COURTS — NATURE AND SCOPE OF A DECREE—PARTIES—APPEALS—REVERSALS AS A BAR TO SUBSEQUENT SUITS.

1. Of the nature and effect of a decree in a court of probate, and as to the parties whom it binds.

---

[1] [Reported by John Gallison, Esq.]

2. Of an appeal to the supreme court, and the effect of a remitter of the cause.

3. If a decree of the supreme court of probate reverse that of the inferior court decreeing distribution,. such reversal is no bar to a subsequent suit by the parties claiming as heirs or legal representatives. A fortiori, it is no bar to a bill in equity. See Harvey v. Richards [Case No. 6,184], and authorities cited; 1 Story, Eq. Jur. § 589, and authorities there cited.

[Cited in Sarchet v. The General Isaac Davis, Case No. 12,357; Aurora v. West, 7 Wall. (74 U. S.) 93.]

[Cited in Uppfalt v. Woermann, 30 Neb. 189, 46 N. W. 421; Viles v. Moulton, 13 Vt. 514.]

This was a bill in equity [by Mary Harvey against John Richards], in which the complainant sought from the defendant, who was administrator with the will annexed, of James Murray, alias Mowry, a discovery and distribution of the undevised estate of the testator, of whom she asserted herself to be heir at law. The defendant pleaded in bar, that before the exhibition of the bill, viz. on the 31st day of August, A. D. 1807, he filed before the judge of probate of the county of Suffolk, in this district, a copy of the will of James Murray, late of Calcutta, in the province of Bengal, deceased, and of the probate thereof, and, in due course of law, procured letters of administration, with the will of said Murray annexed, and afterwards, as administrator, possessed himself of sundry sums of money, being the personal estate of said James Murray within the commonwealth of Massachusetts; that afterwards, on the 30th day of November, 1812, the complainant, and one John Mowry, representing themselves to be the brother and sister, and heirs at law, of said deceased, preferred their petition to said judge, praying him to order a distribution to them of the property of said deceased not bequeathed by him; that on the 15th of February, 1813, at a probate court held at Boston, he, the defendant, presented for allowance his account as administrator, and the said complainant, and John Mowry, then prayed a decree of distribution to and among them, as heirs at law; that the defendant then and there denied, that they were next of kin, and, also, that if they were next of kin, they were entitled to distribution; that the said judge allowed the administrator's account, and decreed distribution of the balance, as prayed for; that on the 16th day of February, he, the defendant, appealed from said decree to the supreme court of probate, next to be held at Boston, and suggested the following reasons of appeal, viz.: "(1) That the said John Mowry and Mary Harvey, who claim as brother and sister of the said James Murray deceased, are not his next of kin, because, as this appellant humbly apprehends, the said James Murray was not born in lawful wedlock, and, therefore, could not have any lawful heirs, but such as should be his lineal descendants. (2) That this court has not power and authority to distribute the unde-

vised surplus of the said James Murray's estate among his next of kin; but that all the goods and chattels collected in this commonwealth by the said administrator, after paying thereout the debts due in this commonwealth and the charges of administration, ought to be transmitted to the executors of the last will and testament of the said James Murray, in Bengal, to be there accounted for, appropriated, and distributed, according to the will of said deceased, and the laws in force in Bengal. (3) That if the said petitioners are next of kin of the said deceased, and, as such, entitled to the residue of his goods and estate, they can only claim the residue thereof, after the payment of all debts and legacies, and charges of administering his goods and estate, both in Bengal and in this commonwealth; and the said petitioners ought, therefore, to make it appear, that the said executor's account has been settled and allowed by the tribunal, having jurisdiction in the case at Bengal, and that nothing is now due in that country, for debts and legacies, and charges of administration there; or to show, otherwise, that the executors have a sufficient sum in that country, to pay all such debts, legacies, and charges; but no such evidence has been offered. (4) That the goods and estate of said deceased, which have come to the hands of his said executors, in Bengal, are not, as this appellant doth aver and verily believe, sufficient to pay the legacies given in and by said will, and the charges of administering his said estate in Bengal, but that they are insufficient for this purpose by the sum of fourteen thousand dollars and upwards, exclusive of interest. (5) That the residue of said deceased's estate ought to be paid over and distributed according to the laws in force in Bengal; and it doth not appear, whether, by those laws, the said residue would be paid over to the next of kin of said deceased, or be retained by the said executors to their own use, or appropriated and distributed in any other manner; and no evidence was offered on that point, and the said appellant doth suggest and aver. that, by the said laws in force in Bengal, all the said residue ought to be retained by the said executors to their own use." The defendant further averred, that he prosecuted his appeal, and that, at the supreme court of probate, held on the second Tuesday of March, A. D. 1814, it was decreed, that the said decree of distribution to the said John Mowry and the complainant was wrong and erroneous, and that the same be reversed; and the said supreme court of probate, then and there, further ordered the said cause to be remitted to the said judge of probate, that he might proceed therein, as to law and justice should appertain; and that the claim of the said Mowry and the complainant, in said court of probate, to be admitted as the next of kin of said Murray deceased, and, as such, to be entitled to distribution, was the same identical claim now

made in the complainant's bill, in which she represents herself as the only next of kin of said deceased. The defendant further averred, that the said Mowry and the complainant became parties, of their own accord, to the proceeding in said probate court, and that the said court of probate, and the said supreme court of probate, were courts of competent jurisdiction to determine, whether the said Mowry, and the complainant, were heirs at law of said deceased, and as such, entitled to the distribution of his estate. To this plea there was a demurrer and joinder in demurrer.

### Mr. Selfridge, for complainant.

This court has concurrent jurisdiction with the courts of probate, in all cases of intestacy and legacies, if the complainant be an alien or citizen of another state. This is not denied by the defendant; but it is alleged, that, the matter, for which relief is now sought, has already been decided by a competent tribunal. No sentence, even of a court of competent jurisdiction, is conclusive upon other courts having concurrent jurisdiction, unless the matter was directly the subject of adjudication. In this case, the defendant's answer merely shows, that a decree of the court of probate was reversed on appeal, and that the cause was remitted for further proceedings. No fact whatever is decided by the decree. The cause must, therefore, be considered as still open to investigation. Robin's. Case, 2 Wils. 118; Duchess of Kingston's Case, 20 State Tr. 355; Cross v. Salter, 3 Term R. 639; Boston v. Boylston, 4 Mass. 325.

### Mr. Hubbard, for defendant.

Does the decree of the supreme court conclude the complainant as to the merits of her claim? Or does it merely relieve the case from the decree of the judge of probate, and thus leave it where it would have been, if no decree had been made in either court? The reversal was of a decree of the judge of probate ordering distribution. If the effect of such reversal were merely to open the cause, and restore it to the same state as before any decree, it would be competent for the judge of probate to proceed, and again order distribution. The appeal would thus be nugatory, and the administrator would be bound by his bond to pay over to such person, as the judge of probate should appoint. 1 Mass. Laws, 128, 246; Prov. Laws, 230; Parker v. Harris, 1 Salk. 262. And its being a will of foreign probate would not alter the case. If the judge of probate has now no power to decree distribution, then the decree of reversal has all the effect, for which the defendant contends, viz. that the present petitioner is not entitled to a distributive share. The simple reversal of the judge's decree was, therefore, all that was required to give full operation to the sentence of the supreme court. But, admitting that, by the reversal,

the parties are, in all respects, restored to their former situation, is this court now competent to decide on their rights, when, by so doing, they oust of its jurisdiction a court, before which the cause is regularly pending? The effect of a re-opening of the cause can be no other, than to authorize the court of probate to go on and decide, in the same manner as if nothing had been done. It would follow, that the complainant is still a party to the proceedings in that court, and the pendency of those proceedings is a good plea in bar to the proceedings here. Gregory v. Molesworth, 3 Atk. 627. The complainant, having elected her remedy in a court of the state, cannot now abandon it, and compel the administrator to answer in a court of the United States. At any rate, she should have removed her cause before a trial in the probate court. But it is contended, that the decree of the supreme court is conclusive upon the complainant, as to her claim here. That decree must have proceeded upon some of the reasons of appeal, or upon all of them together. It decided, that the complainant and John Mowry were not next of kin, or, if next of kin, that they were not entitled to distribution. This, it is true, might have been either because they did not show, that there were no debts or legacies to be paid in Calcutta, or because they were not entitled by the laws of Bengal, or because the jurisdiction belonged to some foreign court. But, of these causes, it is only that of debts and legacies to be paid, which can be considered as dilatory. And when one of the reasons is, that the parties are not next of kin, and, the decree being general, no specification is requested by the parties, it must be presumed to have been founded on such of the reasons as are permanent and conclusive, or else on all of them taken together. The effect, therefore, is the same, as if the reason had been asked, and it had been stated to be, that the parties were not next of kin. 2 Rolle, Abr. 219; Eccl. Ley. Pl. 2. A court of competent jurisdiction having decided a fact directly put in issue before it, the party is estopped from trying that fact again. 8 Rep. Pref. 27; Cro. Eliz. 668; Sparry's Case, 5 Reporter [Coke] 61; Kitchen v. Campbell, 3 Wils. 304; 2 W. Bl. 830; Putt v Rawsterne, Poll. 634; Seddon v. Tutop, 6 Term R. 607; Marriot v. Hampton, 7 Term R. 269; Outram v. Morewood, 3 East, 346; Fitzp. Abr. "Estoppel," pl. 20; Bunting v. Lepingwell, 4 Reporter [Coke] 29; 2 Vent. 44; Kenn's Case, 7 Reporter [Coke] 42b; 5 Reporter [Coke] 7a; Jones v. Bow, Carth. 225; Da Costa v. Real, 2 Strange, 961; Burrows v. Jemino, Id. 733; Rex v. Rhodes, Id. 703; Rex v. Vincent, 1 Strange, 481; Blackham's Case, 1 Salk. 290; Clues v. Bathurst, Hardw. Cas. Temp. 11; Noell v. Wells, 1 Lev. 235; Collins v. Jessot, 6 Mod. 155; Rex v. New College in Oxford, 2 Lev. 15; Meadows v. Duchess of Kingston, Amb. 761; Baxter v. New England Ins. Co., 6 Mass. 286. Now, in this case, the same allegations are made.

and the same facts will be in issue, in this court, as in the court of probate. The maxim of law is "Nemo debet bis vexari, si constet curiae quod sit pro una et eadem causa." It is said (4 Vin. Abr. tit. "Chancery" [R], p.391) that chancery shall not relieve against a maxim of law upon a matter of equity, by which the maxim shall be crossed, for this is to make a new law.

STORY, Circuit Justice: Have you any case, in which a judgment of a court of competent jurisdiction having been reversed, the party is precluded from a new action?

The reversal is conclusive as to the error, for which the judgment is reversed. If it be for mere form, the party is not concluded upon the merits. But there is a difference between this case and cases at common law, in which a new suit may be brought after reversal. This is a proceeding in rem; a party comes in and claims to be entitled. On appeal to another court, it is decided that his claim is not good, and the cause is sent back for the administrator to proceed, as he would have done, if no such interference had taken place. The effect is only to discharge the cause of the difficulty arising from this claim, leaving the other proceedings in full force. Otherwise, it would be necessary to pursue, de novo, all the steps of the administration.

Mr. Otis, on the same side.

The question presented by the complainant's bill has already been decided by a court of competent jurisdiction, and one of her own election. The principles both of law and equity, therefore, forbid its being again revived. The jurisdiction of matters relating to estates and wills belongs, originally, to the probate court, and no court, with similar powers, or for similar purposes, has yet been instituted by the United States. The probate court must, at least, have the exclusive cognizance, so far as to settle the administration account, and to determine what sum remains to be distributed. It was optional with the complainant to make her claim before that court, or to omit it, and, if the doctrine contended for on the other side be true, she might have proceeded originally here. She has made her election, and obtained a decree, from which the respondent appealed for reasons, any one of which is conclusive. Upon these reasons the supreme court has decided, and the question is, what effect is to be given to its decree? To ascertain whether it be conclusive, it is only necessary to consider what the judge of probate could have done after the reversal. If the reversal was founded upon some only of the reasons of appeal, then, as to the others, it was competent for him to proceed anew. But could he, afterwards, upon application of the parties, try the fact of James Murray's legitimacy? Certainly he could not. He must consider the question as settled by the court, to which the cause was carried by appeal. But, even if the decree were not conclusive upon him, the cause would be still in the probate court, where the complainant has elected, to proceed. This election she ought not now to be permitted to waive, for the purpose of convening the administrator before another court. Had the supreme court affirmed, instead of reversing, the decree of the judge of probate, the administrator would have been concluded. He could have had no remedy in a court of the United States. Having, then, been brought by the complainant into a situation, in which the judgment of the court was binding both upon him and the executor in India, it would be unjust, that after a decree in his favor, he should be drawn from that tribunal to answer before another.

The court will not, in this case, be anxious to extend its jurisdiction, to remedy even a defect of justice in another tribunal. For, though a citizen of another state may obtain relief in the chancery court, yet, to a citizen of Massachusetts, there will be no remedy, after an appeal to the supreme court of probate. In addition to this inequality of remedy, where the rights are the same, numberless inconveniences must arise from the frequent clashing of the jurisdictions. It would also be in the power of any stranger to put a stop to the proceedings of the probate court, and the object of the law in permitting foreign executors to collect the debts and effects lying within our territory might be entirely defeated. This inconvenience is strongly exemplified in the present case. The complainant has arrested property, which was going to the executor in a foreign country. She has detained it here several years, and now that a decision has been pronounced against her, she comes into a court of chancery, to begin de novo, and still further to embarrass the proceedings of the defendant and executor.

On writs of error it is not unusual for the court to go on and decide every question of law, in order to prevent future litigation. This has often been done in the supreme court of the United States. This court will be governed by the same equitable maxims, and will, therefore, refuse to sustain the petition of a party, who has already elected to proceed in another jurisdiction.

Mr. Dexter, in reply.

There is no reason to apprehend such clashing of jurisdiction, as has been suggested on the other side. But even if there were, it is a sufficient answer to the objection, that the constitution and laws have made it the duty of this court to hear and decide the present complaint, as a part of its general jurisdiction, extending to all controversies between citizens of different states. However it might have been in a case, in which there

were in one state many heirs, and but one in another, such is not the present case. Here there is but one complainant, who claims as sole heir. It being then clear, as a general position, that the court has jurisdiction, an attempt is made to show, that its jurisdiction cannot be exercised, because the plaintiff has made her election to proceed in a state court, and because the defendant appealed from a decree of the judge of probate to the supreme court of probate, where a reversal was had, which it is contended must be conclusive as to all the reasons of appeal, in their nature final and not dilatory. It will not be denied, that the complainant is concluded, if she has proceeded to a final judgment, definitively settling her rights; but if there has been no such judgment, it cannot be pretended, that her election to proceed in a state court has taken away her right of resorting to a court of the United States.

(Upon this point, Dexter was stopped by the court.)

It is next contended, that, as the law requires reasons of appeal, the judgment must be taken to be conclusive as to all the reasons assigned. But the reasons of appeal are merely formal. They resemble an assignment of errors. The court will permit other reasons to be argued, and, on writs of error, will reverse the judgment, if other errors than those assigned are apparent on the record. It never was pretended, that the party is limited to the errors assigned. No greater effect is given by the statute to the reasons of appeal. But even if the court were restricted to the reasons of appeal, the consequences contended for would not follow. That sufficient cause is found for reversal, which would be the case if one reason out of ten were allowed, affords no ground for supposing that the other nine are also well founded. There is, in this case, nothing, from which it can be inferred, that the court proceeded upon one reason more than another. The decree of reversal may be right, and yet the complainant may have good ground to maintain her present bill. The reversed decree admitted Mary Harvey as co-heiress with John Mowry. It is now alleged, that Mary Harvey is sole heiress. Surely, the commencing of an action by mistake jointly with another in a state court, cannot preclude the party from suing alone in a court of the United States.

It is further contended for the defendant, that the original cause is now reinstated. But in truth there is now no cause in the probate court. There were two plaintiffs, who obtained a decree of distribution. This decree, on appeal, has been generally reversed. The case is to be governed by the same principles, as if there had been two plaintiffs in assumpsit. It is said, however, the cause was remitted. But why was it remitted? Evidently for no other purpose, than to enable the judge of probate to go on

and settle the administrator's account. The controversy between these parties never could have been remitted. There is, at this moment, no suit pending, in any court of this state, at the promotion of the complainant, either alone or jointly with John Mowry. And even if a suit were pending, she has the right, at any time, to discontinue and abandon it, and she has done all in her power to effect such discontinuance. It is, indeed, provided by a state law, that an heir before he brings any action for his share, shall have it settled and ascertained by the probate court; but this applies solely to the courts of law, there being no chancery court in Massachusetts.

Mr. Otis, for defendant.

When an action is brought by two, and the judgment is reversed, though one of them has good cause of action, that one, it is true, may afterwards sue alone. But the reason is, that the court cannot sever, and order the cause to proceed as to one of the parties. It is otherwise in the present case. The court might sever, and either decree the whole to Mary Harvey, or send the cause back to the inferior court for an inquiry into her rights.

STORY, Circuit Justice (after stating the pleadings). The question is, whether this plea, as pleaded, is a good bar to the present bill. It is argued on the part of the defendant in the affirmative on various grounds, which I will, in the course of this opinion, distinctly consider. It is to be recollected, that the proceedings before the probate court were not between the same parties, as in the present; there was a joinder of John Mowry with the present plaintiff, and unless in probate proceedings the parties are considered as prosecuting severally and for their several interests, as well as jointly, according to the course of the civil law, there would be a difficulty in sustaining the conclusiveness of the decree of the probate court upon technical principles, even supposing such decree to purport all that the defendant now contends for; for such a decree in general, would not only bind parties and privies, and the present case would not be between the same parties. But waiving all controversy on this point, let us now proceed to the consideration of the legal effect of the decree, supposing it in fact to have been made between the same parties. The decree of the supreme court of probate purports, on the face of it, to be, a simple reversal of the decree of the inferior court, and a remitter of the cause to that court for further proceedings. It does not therefore assume to make any conclusive or final decision on any rights or interests of the parties, but leaves those rights and interests precisely as they were before the original decree was made, unless by intendment of law a different result is to be attributed to such a

decree. At common law, if a plaintiff obtain a judgment in an inferior tribunal, which is reversed in the appellate court, it is very clear, that the reversal operates no further, than to nullify the original judgment. In other respects, the parties are, precisely in the same situation, as to their rights and remedies touching the matter in controversy, as if no such judgment had ever existed. If this case then were to be tried by the common law, the defendant's counsel could not sustain their objection. Upon what principles is a simple reversal of a probate decree to be held to have a more extensive operation?

It is argued, that the reversal in this case must have been upon the merits of the controversy between the parties, for all or some of the reasons assigned in the reasons of appeal, and therefore conclusive upon the parties, as the sentence of a court of competent jurisdiction upon the identical questions now before this court. It is difficult to perceive on what principles of law this argument is founded, and no authority in point has been adduced. The general doctrine is laid down with admirable clearness in the Duchess of Kingston's Case, 20 State Tr. 355, Hale, Hist. C. Law, by Runnington, note C, p. 39, by the lord chief justice of the common pleas, in delivering the opinion of all the judges. He says: "From the variety of cases relative to judgments being given in evidence in civil suits, these two deductions seem to follow as generally true:—First, that the judgment of a court of competent jurisdiction, directly upon the point, is, as a plea, a bar, or, as evidence, conclusive between the same parties, upon the same matter, directly in question in another court. Secondly, that the judgment of a court of exclusive jurisdiction, directly upon the point, is, in like manner, conclusive upon the same matter, between the same parties, coming incidentally in question in another court for a different purpose. But neither the judgment of a concurrent or exclusive jurisdiction is evidence of any matter, which came collaterally in question, though within their jurisdiction, nor of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment." See Hibshman v. Dulleban. 4 Watts, 183, per Gibson, C. J.; Arnold v. Arnold, 17 Pick. 7–14; 1 Phil. Ev. (Am. Ed. 1839), p. 321, note 557.

Now in the probate decree before the court, there is no decision of the court directly upon any point of fact or of law; and upon what grounds the decree itself was founded is no where stated, and cannot be collected by argument or inference; and even if it could, we are informed from the highest authority, that it would not be conclusive in another suit. The argument too proceeds upon a supposition, that in probate appeals the court are confined to the reasons of appeal, and cannot decree aliunde. But the statute of Massa-

chusetts of the 12th of March, 1784, c. 46 (1 Mass. Laws, 155), contains no such limitation; and therefore, upon general principles, applicable to appeals according to the course of the civil and ecclesiastical law, the whole cause stands de novo in the appellate court, and may be decided upon, unaffected by the preceding sentence. But if it were otherwise, the case would present intrinsic difficulty, for it would still be uncertain, what was the particular reason, upon which the reversal proceeded; and some at least of the reasons would seem in the nature only of temporary bars. Besides, there may be errors on the face of the decree, or the proceedings, untouched in the reasons of appeal, which may well authorize a simple reversal; yet the argument assumes, that the court were bound to adjudge between the parties, as to the merits of the appeal, in the manner by them stated, notwithstanding the most unquestionable errors.

Another fatal objection to the argument is, that it attributes to a mere reversal of a decree all the legal efficacy of a subsisting decree upon the merits. It is in general true, that a judgment or decree upon the merits of any cause of action is conclusive as to the rights of the same parties, while the judgment or decree remains in force; and if the same judgment or decree find any particular fact or issue directly, the same operates by way of estoppel conclusively upon the parties, while the record is in force. But a reversal, with few exceptions, affirms nothing but its own correctness. It simply nullifies the former judgment or decree, and declares that it shall henceforth be deemed void. It decides nothing upon the rights of the parties; but confines itself to the adjudication, that what has been done shall have no legal effect. To give it a more extensive operation, either as a bar or as an estoppel, it is necessary to show, that it directly affirms or denies some distinct fact in issue. There is no pretence, that the present decree, on the face of it, does either. It is further argued, that if the reversal be not a conclusive bar by its intrinsic force, it operates so indirectly, inasmuch as the plaintiff is estopped, by her election to proceed in the probate court, from pursuing any remedy elsewhere. I know of no such estoppel in this case. In general, the pursuit of a remedy at law, which has become fruitless, is no bar to the pursuit of a remedy in equity for the same subject matter. So far from it, that in many instances, the whole equity grows out of the incompetency of the law to afford any adequate relief. Much less is it true, that an election to proceed in one court of competent jurisdiction, either of law or equity, where the suit is abandoned, operates as an estoppel to another suit in any other competent court. It is further argued, that the present bill ought not to be sustained, because the original suit is still pending in the probate court and unde-

termined, and to assume jurisdiction would be to oust that court of its concurrent cognizance of the cause. Admitting that on a demurrer to a plea in bar like the present, such a consideration could properly arise (which in point of law cannot be conceded), the objection cannot be sustained, for there is no allegation of the actual pendency of such a suit; and if there were, it could not be pleaded in bar, but simply in abatement of the present bill. But in point of fact, upon the remitter of the cause from the supreme court of probate, I take it to be clear, that the cause could not again depend in the inferior court, until the parties had done some act, by which the authority of that court was called again into exercise.

An argument ab inconvenienti has also been drawn from the supposed conflict of jurisdictions, which may ensue, if this court should sustain its jurisdiction over this cause. To arguments .of this sort, in proper cases, this court will be disposed to listen with all possible deference. We shall not incline to encroach on the state authorities, or seek to withdraw causes from their proper forum. But when a suit is instituted by competent parties, on a subject matter cognizable by the court, I know of no authority that will justify us in declining the jurisdiction. We are not at liberty to shrink from the discharge of duties imposed upon us by the law, or to violate the rights of parties regularly before us, merely because the cause may occasion personal or public inconvenience. Such considerations belong to another tribunal. On the whole, I am very clear, that the plea in bar is insufficient, and must be overruled.

[For further proceedings, see Cases Nos. 6,183 and 6,184.]