46 U.S. 121
 5 How. 121
 12 L.Ed. 78
 JACOB S. MAYBERRY, PLAINTIFF IN ERROR,
v.
JAMES H. THOMPSON, DEFENDANT.
 January Term, 1847
 
 THIS case was brought up, by writ of error, from the Circuit Court of the United States for the Southern District of Alabama.
 It was originally brought by Mayberry in the District Court of the United States for the Middle District of Alabama. Mayberry was a citizen of Mississippi.
 The action was brought at the May term, 1841, and was an action of trespass to recover damages from Thompson, for forcibly taking, seizing, and carrying away certain goods, wares, and merchandise of the plaintiff, at Warsaw, in Sumter county, Alabama.
 At the November term, 1842, the cause came on for trial, when the jury found a verdict for the plaintiff, and assessed his damages at $3,709.94. On the trial, the defendant's counsel filed the following bill of exceptions.
 Be it remembered, that, in the trial of this cause, the plaintiff in the first instance introduced testimony tending to show that some time in February or March, 1841, he sent cotton and drafts to Mobile, and received the proceeds thereof, about $3,200, and that he went with the same, and with letters of recommendation, to the city of New York, for the purchase of goods, and there purchased sundry bills of goods, of different houses, for which he paid to each house about one half of the price of each purchase in money, the proceeds of the cotton and drafts aforesaid, and gave his own notes to said several houses for the residue of the purchase money, maturing at different dates, which said notes still remain unpaid, and that the sellers of said goods knew no persons in the transaction except the plaintiff; that said goods were marked in the name of the plaintiff, and sent forward to his address for Cooksville, in the State of Mississippi, but that, before reaching their destination, they were seized by the defendant, at Warsaw, in the State of Alabama, and by him sold.
 The defendant then introduced testimony, conducing to show that a fraudulent and collusive arrangement had been entered into between the plaintiff and one James Randalls, some time in June, 1840, for the purpose of screening the property of said Randalls from claims of his creditors, by which a certain stock of goods and other property, which said Randalls then had, were collusively passed to said plaintiff, and the business of said Randalls thereafter, until after the seizure of said goods by defendant, was carried on in the name of said plaintiff; but that said business, including the sending of said cotton and drafts to Mobile, the raising of said money, and the purchase of said goods in New York, though done ostensibly by said plaintiff, and in his name, was really done by said Randalls, acting by and through said plaintiff, and in his, the plaintiff's, name, and that said goods, seized and sold by the defendant, were by him seized and sold as an officer on process in his hands against said Randalls, as his, the said Randalls's, property, and for his debts; and also that the plaintiff had little or no cotton at or about the time said cotton was forwarded to Mobile as aforesaid.
 The plaintiff then introduced the said Randalls as a witness, and asked him the single question, whether he had interest in said goods seized, at the time they were seized and sold; to which question the witness answered that he had not. The defendant then, on cross-examination, for the purpose of contradicting said Randalls by the testimony of other witnesses, if he answered in the negative, and thus impeaching his testimony, inquired of him whether he had stated to an individual, at about the time said cotton was sent to Mobile, that he, the said Randalls, had succeeded in sending cotton to Mobile, so that the same had not been attached; but the plaintiff's counsel objected to the witness answering the question, and the court ruled that the inquiry was of matter collateral and irrelevant, and that the witness need not answer the question propounded, and he did not answer the same. The defendant, also, for the same purpose last expressed, proposed to inquire of said Randalls, whether he had not stated to a certain individual, at or about the time said plaintiff left for New York, for the purchase of said goods, that he, the said Randalls, had sent said plaintiff for goods; but it was ruled by the court that it would not be competent for the defendant to discredit said witness by showing that he had made statements when out of court, and not on oath, different from his testimony given in court; and the question was not permitted to be put.
 The court instructed the jury, that if they believed that the goods purchased by the plaintiff in New York were purchased with the money of the said Randalls, and that the plaintiff acted merely as a shield for said Randalls, to protect the said goods from Randalls's creditors, that the said goods were to be considered as the goods of Randalls, and were lawfully attached by the defendant on an execution against Randalls; but that when the goods were purchased for said Randalls in part with the money of Randalls, and in part upon the credit of plaintiff, he giving his note to the several New York mercantile houses from which the purchases were made, and they being ignorant of any fraud between the plaintiff and said Randalls, then the said goods thus purchased could not lawfully be sold by the defendant on execution against said Randalls; that the remedy of creditors of Randalls, when the goods were purchased in part with the money of Randalls, and in part upon credit of plaintiff, was in a court of equity, where the interest of all concerned might be apportioned and adjusted.
 The defendant thereupon requested the court to instruct the jury, that if they should find for the plaintiff, they might, in making up their verdict, deduct from the amount the money and lawful interest thereon, in all cases where said goods were purchased in part with the money of Randalls, and in part upon the credit of the plaintiff; which charge the court refused to give.
 And the defendants took exception to the beforementioned ruling and charge of the court, and the refusal to charge as requested, and prayed that his said exceptions might be signed, sealed, and allowed, and the same is done accordingly.
 The defendant, Thompson, sued out a writ of error, and carried the case to the Circuit Court of the United States for the Southern District of Alabama, under the act of 1839, ch. 20 (5 Stat. at L., 315).
 At March term, 1843, the Circuit Court passed the following order:—'This day came the parties, by their attorney, and this cause coming on to be heard upon the transcript of the record, and the matters assigned for error being heard by the court, and mature deliberation being thereupon had, it is considered by the court that there is error in the record and proceedings of the said District Court; whereupon, it is ordered and adjudged by the court there that the judgment of the District Court be reversed and annulled, and that the said plaintiff recover his costs.'
 From which judgment Mayberry sued out a writ of error, and brought the case up to this court.
 It was argued by Mr. Brockenbrough and Mr. Sherman, for the plaintiff in error, and Mr. Dargan, for defendant in error.
 The third point of the counsel for the plaintiff in error was the one upon which the opinion of this court turned, and is therefore the only one inserted. It was as follows:——
 III. As to the venire facias de novo and an absolute reversal.
 There can be no doubt that if the Circuit Court was clear, from the record, that the plaintiff had no cause of action, and was not entitled to recover in any event, under the facts, that that court was right in absolutely reversing the judgment. But if the Circuit Court considered the District Court correct in its judgment as to the illegality of the levy and sale, but wrong as to the question of evidence in the cross-examination of Randalls only, then it should not have reversed the judgment absolutely, but have remanded it with a venire de novo, that the plaintiff might have the benefit of his meritorious right of action, and the defendant not be deprived of his full rights in the cross-examination.
 But as we contend the District Court was right in both points, we ask to set aside the reversal, and set up the judgment of the District Court.
 But if this court thinks the District Court did not err upon the main question, but did err on the question of the cross-examination, then this court will reverse the decision of the Circuit Court, with the proper directions; because that court did not award a venire facias de novo.
 The counsel for the defendant in error noticed this point as follows:——
 The act of Congress that established the Middle District of the State of Alabama, and allowed appeals and writs of error from that court to the Circuit Court for the Fifth Judicial Circuit, does not by any express words make it obligatory on the Circuit Court to award a venire de novo, but is silent on the subject, therefore we must look to the general rules of practice on this subject. I admit that the Circuit Court may award the venire de novo on reversing the judgment of the District Court, but I deny that an omission to do so can be reached by a writ of error, unless the party claiming the venire had asked the court below to award it, and the court had refused it. It is a settled rule, that a party complaining of errors must show it affirmatively; he must show that the inferior court erred, and this error was prejudicial to his rights. Bradstreet v. Huntington, 5 Pet., 402.
 Now, the defendant in error in the Circuit Court (who is plaintiff here) could have demanded a venire de novo, but he did not; the Circuit Court, therefore, did not deny him the right of the writ of venire, nor act on it. How did this action of the Circuit Court leave the rights of the plaintiff in error?
 The judgment of the District Court was reversed, and held for nought. The parties were put by this judgment in the same situation they occupied before the suit was brought; and the plaintiff in error in this court could have issued a new writ. In Bank of the United States v. Bank of Washington, 6 Pet., 8, the Supreme Court held, that a party who had derived a benefit from a judgment which had been reversed, must make restitution; that is, the reversal of the judgment puts the parties in statu quo. So in 2 Gall., 216, it is held, that a judgment reversed is no bar to an action on the same subject-matter. So in 1 Root (Conn.), 421, it is decided that, if a judgment on a note is reversed the note is revived; to the very same effect see 10 Mass., 433; 5 Id., 264; 3 Johns. (N. Y.), 443.
 These authorities, I think, settle the point that Mayberry, on the reversal of the judgment by the Circuit Court, could have brought a new suit in the State or federal courts, or he could have demanded a venire de novo. But he had the option to do the one or the other; he did not inform the court which remedy he chose. Can he now complain of error that the court left him to select for himself? Can he complain that the court did not grant him a remedy which he did not apply for, when he had the power to select between two remedies? This view will show that the court did him no injury,—the court was merely passive; it did not decide on any right, nor act on any. Will error lie, therefore, in such a case? If so, may I not well ask, in what did the court err?
 Again. The motion for the venire must be made in the court below. I think it plain that the party cannot come here by writ of error, and, for the first time, move for the venire in this court; the object of the writ of error being merely to make such a motion.
 Mr. Chief Justice TANEY delivered the opinion of the court.
 
 
 1
 Upon looking into the record, in this case, we find that there was no final judgment in the Circuit Court, and consequently no writ of error will lie from this court.
 
 
 2
 It appears that the plaintiff in error brought an action of trespass against the defendant, in the District Court for the Middle District of Alabama, for taking and carrying away certain goods and chattels alleged to be the property of the plaintiff, and recovered a judgment for $3,709.94 and costs.
 
 
 3
 A bill of exception was taken by the defendant to the rulings of the court upon several points raised at the trial, and the case removed by writ of error to the Circuit Court for the Southern District of Alabama, where the judgment of the District Court was reversed with costs. And upon this judgment of reversal, without any further proceedings in the Circuit Court, the plaintiff sued out a writ of error from this court.
 
 
 4
 The writ of error to remove the case to the Circuit Court is given by the act of 1839, ch. 20, § 9; and as this law contains no special provision in relation to the judgments of the Circuit Court in such cases, the decisions of that court must be re examined here, in the manner and upon the principles prescribed in the general laws upon that subject.
 
 
 5
 The judiciary act of 1789, § 24, provides, that where the judgment of a District Court is reversed in the Circuit Court, such court shall proceed to render such judgment as the District Court should have rendered. Under this act, however, the judgment of a Circuit Court upon a writ of error to a District Court could not be re examined in this Court; no writ of error in such cases being given. And so the law stood until the act of July 4th, 1840, ch. 43, § 3, which provides that writs of error in such cases shall lie, upon the judgment of a Circuit Court, 'in like manner and under the same regulations, limitations, and restrictions as were there provided by law for writs of error on judgments rendered upon suits originally brought in the Circuit Court.' And, under the 22d section of the act of 1789, writs of error on judgments rendered in a Circuit Court upon suits originally brought there will lie only in cases when the judgment is a final one, and the matter in dispute exceeds the sum or value of two thousand dollars, exclusive of costs.
 
 
 6
 It is evident that the judgment of the Circuit Court now before us is not a final one. It does not dispose of the matter in dispute. And if it was affirmed in this court, it would still leave the matter in dispute open to another suit; and might result in another writ of error to remove it to the Circuit Court, and then again to this court. The act of Congress certainly never intended to sanction such fruitless and inconclusive litigation; and therefore directed that the Circuit Court should give such judgment as the District Court ought to have given, that is to say, a final judgment upon the matter in dispute. Instead of suing out a writ of error upon the judgment of reversal, the plaintiff should have taken the necessary steps to bring his case to a final decision in the Circuit Court, in the same manner as if the suit had been originally brought there. And if he supposed any of the rulings or instructions of the court at the trial to be erroneous, he would have been entitled to his exception, and this court could then by writ of error have re examined the judgment of the Circuit Court, and finally decided upon the matter in controversy in the suit.
 
 
 7
 But upon the judgment of reversal only, which leaves the dispute between the parties still open, no writ of error will lie, and the writ issued in this case must therefore be dismissed.
 
 ORDER.
 
 8
 This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Alabama, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court that this cause be and the same is hereby dismissed for the want of jurisdiction.