MUNYOS, et al, vs FILMORE, et al.

Opinion delivered September 23, 1903.

1. *Injunction—Premature Appeal—Dismissal.*

> In a suit for an injunction restraining defendants from interfering with the possession of certain lands by plaintiff a master's report was confirmed by the court, but no judgment was pronounced thereupon. *Held*, that this order was merely an interlocutory finding and an appeal therefrom is premature and subject to dismissal.

2. *Injunction—Not Allowed to Settle Disputed Title.*

> A court of equity will only enjoin interference with possession of premises when defendants are trespassers; and will not grant such injunction where defendants are in possession under claim of title and the plaintiff's title is in dispute.

Appeal from the United States Court for the Southern District.

,HOSEA TOWNSEND, Judge.

Suit by Egenio Munyos and others against Ben Filmore and others. From an order confirming a referee's report in favor of defendants, plaintiffs appeal. Appeal dismissed.

The complaint in this action alleges that the plaintiffs are owners and occupants of certain described premises; plaintiffs came into possession of said premises by virtue of purchase thereof, and the improvements thereon, from John W. Light, and by purchase from Se-no-ya Aldava, approved by the Indian agents having such matters in charge; that the premises so purchased were held for the use and benefit of plaintiffs for the purpose of allotment, and are not in excess of the pro rata share to which plaintiffs are entitled to hold said lands; that at the time of said purchase said premises were improved by cultivated land, dwelling house, etc.; that on the —— day of June 1900, defendants began to make encroachments on said premises, and to trespass on the rights of plaintiffs, by breaking down fences, plowing up pasturage, digging fence post holes, building fences, and that such injury to plaintiffs would be irreparable; that defendants threaten and intimidate plaintiffs in their peaceable possession of said premises and improvement of the same, to their damage in the sum of $500; that plaintiffs have no adequate remedy at law; and pray that defendants herein be temporarily enjoined and restrained from interfering with

said plaintiffs in the peaceable possession thereof; that they be cited to appear at the next term of this court to answer in this action, and on the final hearing that this injunction be made perpetual, and that plaintiffs have judgment for $500, and other relief. This complaint is accompanied by exhibits showing a bill of sale from Aldava to plaintiffs, of date 13th day of June, 1900, and by various affidavits in support thereof. To this complaint defendants filed general demurrer, for the reason that said complaint failed to state any cause of action against defendants. The demurrer was overruled by the court, no exception appearing to have been taken. Defendants filed their answer, and severally deny that plaintiffs are the owners of and entitled to the possession of the premises described in plaintiff's complaint. They deny that plaintiffs came into possession of, or are entitled to the possession of, the premises sued for herein, by reason of the purchase of said land from one J. W. Light, that said J. W. Light is a United States citizen, and has no right, title, or interest, or the right of occupancy, to the lands sued for herein. Deny that plaintiffs were ever in possession of said land, or that they are entitled to the possession of said land. Aver that on or about June 6, 1900, defendants and one W. J. Brown and D. D. Dawson went upon the lands herein sued for, which were then occupied by a firm by the name of Beck & Glover, who are sublessees of the firm by the name of Gamble, Light & Sparks, and established and erected their monuments on their several parts of the lands herein sued for; that since said date, by reason of their being members of the Chickasaw Tribe of Indians, they are entitled to take their allotments thereon, the same being previously declared by executive order to be a part of the public domain of the Chickasaw Nation, and have since said time resided on said lands or had their tenants thereon. Defendant Filmore alleges and avers that on the 5th day of June, 1899, for a valuable consideration then paid to one Se-no-ya Aldava, he purchased said improvements, and with

the consent of said Aldava that he went into possession of all the land then claimed that was conveyed to the defendants, and attaches a copy of such conveyance, and since and is now in the full and peaceable possession of said part of said lands so purchased from said Se-no-ya Aldava. Defendant Lum Miller alleges. and avers that on the 6th day of June, 1900, and long prior thereto, he, with his codefendants, went, upon said lands, and staked and placed their monuments upon their several prospective shares of said lands that they were entitled to take by reason of being members of the Chickasaw Tribe of Indians; that on or about the 6th day of June, 1900, by and without objection of the parties then in possession of the lands sued for herein, he went upon said lands, and placed thereon valuable and lasting improvements, and selected said land as a part and parcel of his prospective share of the tribal lands of the Chickasaw Nation and that of his minor children, and has since been in the possession of the interest so selected by him. The same allegations are made by defendant D. H. Stephens. The same allegations are made by defendant J. W. Ryan. Defendants deny the right of plaintiffs to the use and occupancy of said lands, and deny that plaintiffs have ever been in possession of said lands, but aver that since June 6, 1900, defendants have been in possession of said premises; deny any damage; deny that defendants are insolvent; deny that plaintiffs have no adequate remedy at law or are entitled to an injunction. Attached to this answer is an exhibit purporting to be a bill of sale under date of June 5, 1899, from Se-no-ya Aldava to V. F. Filmore. Thereafter, on February 27, 1901, the parties agreed that the issues hereinafter defined by the court should be submitted to E. M. Payne, special master. The court submits: "First, is the above entitled action an action at law or an action in equity? Second. If an action in equity, are the plaintiffs entitled to an injunction under the pleadings and the proof to be offered in support thereof?"

Evidence was taken by the master in extenso, and the special master made his report as follows:

"After having fully inquired into the issues and heard the evidence of the witnesses for the plaintiffs and defendants in the above-styled cause, and being fully advised in the premises, I beg to make this, my report:

"The plaintiff Egenio Munyos, known as 'Keno,' in behalf of his wife and seven minor children, claiming to be Chickasaw Indians, institutes this suit, praying for an injunction against the defendants Ben Filmore, Lum Miller, J. W. Ryan, and D. H. Stephens, alleging as grounds for the injunction that the plaintiffs are the owners and occupants of a certain tract of land situated about seven miles southeast of Chickasha about three miles north and south and two miles east and west, composing six sections, and lying west of the old 98th meridian and east of the 98th meridian as recently established; that defendants are trespassing upon said premises, breaking down fences, plowing, building fences, digging post holes, and doing other acts of an irreparable nature; that the defendants are insolvent; and that by granting the injunction a multiplicity of suits will be avoided. I find from the testimony that John W. Light on the 10th day of March, 1899, leased a large tract of land from the Interior Department for grazing purposes, by the terms of which he was to have the right to occupy and graze said land until the 31st day of March, 1901. The land in controversy, with the exception of what is known as the Senovia improvements, is a portion of the said land leased by the said Light for grazing purposes. I find that some time later Light subleased to a firm by the name of Beck & Glover a portion of the land now in controversy, which lease was not to expire until March 31, 1901. The latter part of May, 1900, John W. Light sold his improvements on said land in controversy to the plaintiff in this suit. (What right Mr. Light had in the

improvements sold to Keno, or what right he transferred by reason of the sale, has not to my mind been satisfactorily proven.) It is evident, however, that Keno did not acquire any right to the land in controversy by reason of the sale to him by Light, nor is it contended by the plaintiff that Light transferred to Keno any right to the land. Then whatever right Keno acquired to the land in controversy he acquired it, if at all, by reason of prior occupancy of the premises. Light, in selling the improvements on the premises, which consisted of about two miles of fence, reserved the right to occupy the said land and use the same under his lease until the expiration thereof, March 31, 1901, and has continued in possession of the same and is still occupying said land under his lease.

"In regard to the Senovia improvements the plaintiff introduced proof showing that he had purchased the improvements on said land in June, 1900, from Senovia Aldava, and that he went on the Senovia improvements about the 1st of July, 1900, and camped on the premises for four or five days in a tent and that he went away and did not return until September, 1900, and that he then remained on the premises until about the 1st of January, 1901, when he left the place in charge of a man by the name of Selby, to whom he had rented the improvements on Senovia place. Filmore, one of the defendants, and other witnesses in his behalf, testified that he purchased the Senovia improvements from Senovia Aldava, a Mexican, having the rights of a Comanche Indian, who had a number of years previously caused the same to be placed in a state of cultivation, and who was recognized prior to the change of the location of the meridian as being the owner of said premises. Defendant Filmore purchased said Senovia improvements in June, 1899, and immediately went upon the premises, so the testimony shows, and has since been making improvements on the premises, and has resided thereon since June, 1900, and is

claiming the same as an allotment for himself and family as members of the Chickasaw Tribe of Indians. The defendant Ryan is a noncitizen, and is occupying the Senovia improvements as a tenant of Filmore, and was occupying the premises on the 3d day of August, 1900. D. H. Stephens, one of the defendants, is occupying and claiming as a portion of his allotment, a part of the land leased by Light to Beck and Glover. It appears that he went on said land for the purpose of selecting the same as his allotment in June, 1899, was there again in the fall of 1899, and then went upon the premises in June, 1900, and has since resided thereon, by and with the consent and approval of Beck and Glover. Defendant Lum Miller shows that he has been in possession and raising crops on a small portion of the premises claimed by him for 8 or 9 years, and that on the remainder of the land that he is claiming he has placed posts and made other improvements, with the intention of taking the same as his allotment as a Chickasaw.

"The testimony in this case shows that each of the defendants have been making improvements on the portion occupied by each, respectively, and that they have been building and changing fences, setting posts, and building houses, etc. As I understand the testimony, there is no proof on the part of the plaintiffs that the defendants' acts amount to an irreparable injury to the premises; but, on the contrary, the evidence seems to show that what the defendants have done has considerably enhanced the value of the premises, and that the greatest injury, if any has been done, is to the grazing privileges of John W. Light, whose contract has not yet expired, and who I consider would be the proper party to ask for an injunction if his rights have been abridged by the trespassing of the defendants.

"As to the questions, who are the owners of the premises in controversy? who are now in possession of the premises? and who were first in possession of the premises, as between

(41)

the plaintiffs and defendants? are all questions about which there is a great conflict of testimony, and are properly, I consider, questions that should be passed upon by a jury in a suit between the parties for the possession of the land in controversy. The plaintiffs contend that, under the circumstances of the transfer of the Senovia improvements to Filmore, the minds of the parties never met, and therefore there was no sale, and Senovia had the right to make a sale of the premises to the plaintiff—another question for a jury. The plaintiffs have not joined with this action the action of unlawful detainer or ejectment, but simply ask as a matter of equity that the defendants be enjoined from trespassing upon the premises claimed by the plaintiffs, giving to the defendants no right to a trial by a jury of the issues as to who is in possession or who is entitled to the possession of the premises in controversy. I am further of the opinion that the defendants are improperly joined in this action, for the reason that their interests are not identical, that they are acting independently of each other, and that one is not responsible for the unlawful acts or trespass of the other.

"If the plaintiff is entitled to the possession of the premises, in controversy or was in possession of the same at the institution of this action, his right thereto is not clear and certain, but, on the contrary, is very uncertain, and owing to the conflict of testimony, should be determined by a jury in a proper proceeding.

"In regard to the question submitted by the court, 'First, is the above action an action of law or an action of equity?' my conclusion is that it is in the form of an action in equity, and cannot be tried in its present form as an action at law, but the issues developed in the examination of this cause should be tried in a proper proceeding in an action at law.

"'Second, if an action in equity, are the plaintiffs entitled to an injunction under the pleadings and the proof to be offered

in support thereof'? I am of the opinion that, under the pleadings and the proof submitted to me, the plaintiffs are not entitled to an injunction as prayed in their petition.

"My conclusion from all the testimony is that an ejectment or unlawful detainer suit would be the proper action for the parties to this proceeding to determine their respective rights, in which case the material questions of fact that have arisen in this suit might be properly tried before a jury. I do not consider it the province of a court of equity to try disputed titles to land, but where there is a suit at law instituted for the possession of land, and the defendant is doing acts of an irreparable nature, I think that it is the province of the court to grant an injunction pendente lite, if shown that the defendant was insolvent, In this suit the testimony shows that Stephens and Miller are solvent, and that Filmore and Ryan are insolvent.

"If the plaintiffs in this suit had a clear right to the possession of the premises in controversy, or if it were shown that they were occupying the premises prior to the time the defendants went thereon, and that the defendants were committing trespasses of an irreparable nature, and to the great injury of the plaintiffs, I am of the opinion that the plaintiffs would be entitled to an injunction, providing that defendants were insolvent; but, that state of facts not appearing in this case, I am of the opinion that there is no ground for an injunction proven."

To such report the plaintiffs filed 10 several exceptions, which were thereafter submitted to the court. The court overruled said exceptions, and made an order that the defendants were enjoined and restrained from going upon or interfering with that portion of the Se-no-ya claim now in possession of the plaintiffs or their tenants, and that the tenants, and each of them, and their agents, attorneys, and employes, are restrained and enjoined from interfering with the possession of the de-

fendants or their tenants on what is known as the Se-no-ya place, this order to remain effective until the further order of this court; also restraining defendants from selling or disposing of the tracts of land. This order was made on the 13th day of April, 1901. February 26, 1902, plaintiffs, without leave of court, filed in said court an amended complaint. Prior thereto, and on February 18th, defendants had filed a motion asking that the court in all things confirm the report of the master, and on February 27, 1902, said motion came on to be heard in court; whereupon the court pronounced the following judgment: "Now, on this the 27th day of February, 1902, came on to be heard the application of the defendants in the above-entitled cause, wherein defendants asked for the approval of the special master's report heretofore rendered in this cause, and said 27th day of February being one of the regular days of the February term of the United States court sitting at Chickasha, Ind. Ter. The court having been first duly advised, and after a full and careful understanding of the findings heretofore rendered by the special master, to which this cause was referred by agreement of the parties hereto, the issue therein having been found in favor of the defendant, it is therefore considered, ordered, adjudged, and decreed by the court that the said master's report be, and the same is, in all things confirmed"—to which action of the court plaintiffs at the time, in open court, excepted. Thereafter prayer for appeal was filed and allowed, and the case stands in this court for hearing.

*M. M. Beavers, D. D. Sayer, John A. McClure,* and *W. W. Beavers,* for appellants. *Holding & Bailey,* for appellees.

GILL, C. J. Appellees make the point that the appeal in this case is premature, inasmuch as the judgment of the court below was not upon the merits of the case, which has not yet been heard; that the parties to the action have not been dismissed nor their rights adjudicated.

Of course, if this be true, this appeal cannot stand, and it is useless to go into an extended discussion of the case, as, until the lower court has finally adjudicated the matter it cannot be heard in this court. Crull vs Keener, 17 Ill. 246; A. T. & S. F. R. Co. vs Brown, 26 Kan. 443; Adams vs McPherson, 2 Idaho, 855, 27 Pac. 577; Howard vs Louisville & N. R. Co. (Ky.) 32 S. W. 746; Century Dig. vol. 2, pp. 991, 992, "Appeal and Error."

What, if anything, is decided in this cause in the court below? An examination of the court's judgment shows that it relates merely to the approving of the master's report, which reads as follows: "The court having been first duly advised, and after a full and careful understanding of the findings heretofore rendered by the special master, to which this cause was referred by agreement of the parties hereto, the issue therein having been found in favor of the defendant, it is therefore considered, ordered, adjudged, and decreed by the court that the master's report be, and the same is, in all things confirmed." Now, under this judgment, what has been determined by the court? Merely that the master's report is in all things confirmed The court makes no judgment. The court awards nothing to any one, either plaintiff or defendant. The action primarily was for an injunction and for damages. The master has reported his findings of fact and conclusions of law in the case. The court says that these findings of fact and conclusions of law are correct and are confirmed, but the court has not acted upon these findings of fact and conclusions of law to pronounce judgment thereon, and there is no judgment standing in this action except an interlocutory finding of the judge, from which, under light of all authorities, appeal cannot be had until final judgment thereon. Palmer vs McChesney, 26 Ark. 452; Mayberry vs Thompson, 46 U. S. 121, 12 L. Ed. 78; Howard vs Louisville & N. R. Co. (Ky.) 32 S. W. 746; Hutchinson vs Ayres, 117 Ill. 558 7 N. E. 476.

We are satisfied, and it is our opinion, that this appeal was premature, and that the same ought to be dismissed. Before, however, dismissing the appeal, we would look at one portion of the special master's report submitted to the court below, which reads as follows: "My conclusions from all the testimony is that an ejectment or unlawful detainer suit would be the proper action for the parties to this proceeding to determine their respective rights, in which case the material questions of fact that have arisen in this suit might be properly tried before a jury. I do not consider it the province of a court of equity to try disputed titles to land, but where there is a suit at law instituted for the possession of land, and the defendant is doing acts of an irreparable nature, I think that it is the province of the court to grant an injunction pendente lite, if shown that the defendant was insolvent. In this suit the testimony shows that Stephens and Miller are solvent, and that Filmore and Ryan are insolvent. If the plaintiffs in this suit had a clear right to the possession of the premises in controversy, or if it were shown that they were occupying the premises prior to the time the defendants went thereon, and that the defendants, were committing trespasses of an irreparable nature, and to the great injury of the plaintiffs, I am of the opinion that the plaintiffs would be entitled to an injunction, providing that defendants were insolvent; but, that state of facts not appearing in this case, I am of the opinion that there is no ground for an injunction proven."

It is the opinion of this court that where, as in this case, plaintiffs file their complaint asking that certain parties be enjoined from trespassing upon the premises of another, and merely containing a general allegation of damage, that before injunction is authorized the trespass complained of must be naked trespass —that is to say, a trespass made by some one without color or right to the premises trespassed upon; and that where parties

defendant come into the case, and show, by answer or proper motions, on testimony, that they are claiming as owners, or claiming under some color of right, and are not naked trespassers, the court will not in such case proceed to attempt to define the rights of the parties in the injunction action, but will require the plaintiffs to refer the matter to the proper tribunal. In other words, that the equity court will not permit parties in an application for injunction to settle a disputed title. Beach on Injunctions, vol. 1, § 20; Id. vol. 2, § 998; High on Injunctions (2d Ed.) §§ 698, 701, 728; American Dig , tit. "Injunctions," vol. 27, §§ 82, 83, 84 and 85, and cases cited.

And, without undertaking to pass upon the testimony and its effect in this case, if such testimony shall show the condition of affairs as reported by the special master to the court it would then become the duty of the court to refuse the application for injunction, and require the parties to refer their claims to the proper tribunal for decision of the rights claimed by each.

For the reasons foregoing, the appeal in this case is ordered dismissed.

CLAYTON and RAYMOND, J.J., concur.