SHALL AS AD. ET AL. VS. BISCOE ET AL.

Mere delay to sue out execution during the time prescribed by law for the continuance of the judgment lien, would not of itself, be sufficient to displace the lien: nor would the issuance and return of an execution without action, by order of the plaintiff, discharge the lien, or postpone it in favor of a subsequent judgment lien. (*Trapnall vs. Richardson et al.* 13 *Ark.* 551; *Watkins et al. vs. Wassell,* 15 *Ark.* 90.)

The vendor of land has, in equity, a lien for the purchase money, not only against the vendee himself, and his heirs and other privies in estate, but also against all subsequent purchasers having notice that the purchase money remains unpaid: and this, though, there is no special agreement that there shall be a lien upon the land for the purchase money, and notwithstanding the vendor conveys the land by deed, and takes the note or bond of the vendee for the purchase money. (14 *Ark. Rep.* 634.)

But where the vendor of land conveys it to the vendee by deed, taking his note for the purchase money, an assignee, by the mere assignment of the note, would not be subrogated to the vendor's lien upon the land for the payment of the purchase

money, to enforce payment of the note.  (*Quære:* would the vendor, in such case, if forced to pay the note as assignor, regain his lien: or would he lose his lien by taking security for the purchase money?  See the adjudications of the several States collated in the opinion.)

The judgment of a Court of concurrent, or of exclusive jurisdiction is not conclusive of any matter which came collaterally in question, nor of any matter to be inferred by argument from the judgment: and so, where the trustees of the Real Estate Bank—W. being one of them—filed a bill against the vendor and vendees of land to obtain satisfaction of a judgment rendered in favor of the trustees against the vendees for the debt due upon the sale and purchase of the land, by being subrogated to the vendor's lien, and obtained a decree to enforce the lien; W. is not thereby estopped to set up a title acquired, before the bill was filed, by purchase under a prior judgment, which was not called in question or determined by the bill and decree—no question as to the lien of such prior judgment, nor as to the title acquired by W. as purchaser under it, being before the Court.

W. one of the trustees of the Real Estate Bank, purchased one half interest in certain lots at judicial sale under a judgment having a prior lien; afterwards, W. with his co-trustees filed two bills to fix liens upon the same lots and enforce satisfaction of junior judgments in favor of the Bank, but which had been rendered before the purchase of the lots by W.   The trustees obtained decrees for the sale of the lots; caused them to be sold and purchased in their name; took deeds for them; had the sales confirmed and deeds recorded; and in each case made the purchase with the means in their hands as trustees; W., with the means and opportunity of knowing his own acts and those of his co-trustees in the premises, and with a full knowledge of his rights, is silent, during the whole proceedings, as to his own claim.   *Held,* that under the circumstances, neither W. nor those claiming under him can be heard in a Court of equity to assert his title against the title of the trustees.

## Appeal from Pulaski Circuit Court in Chancery.

The Hon. William H. Feild, Circuit Judge.

Watkins & Gallagher for the appellants.

1st.  Did not the Bank, if she ever had any lien upon the property in dispute, waive and lose the same by accepting the bill of exchange, with a new and additional security, in payment of the note assigned to her and which was given for the property? Taking a note, bill or bond with a distinct security is evidence that the vendor does not repose upon the lien, but upon an independent security, and discharges the lien.   4 *Kent Com. sec.* 58, *p.* 153 (3 *Ed.*); *Gilman vs. Brown,* 1 *Mason* 214; *Bagley vs.*

*Greenleaf,* 7 *Wheat.* 46; *Moore et al. vs. Holcombe et al.,* 3 *Leigh* 597; *Brawley vs. Catron,* 8 *id.* 522; *Campbell vs. Baldwin,* 2 *Humph.* 248; 3 *id.* 616; *Burke et al. vs. Gray et al.,* 6 *How. (Miss.) Rep.* 527; *Foster vs. Trustees of the Atheneum,* 3 *Ala.* 302; *See Annotations of Wallace in the American notes to Leading cases in Eq. p.* 241 *to* 251.

2. Did Walters by joining in the bill filed by the trustees (of whom he was one) to inforce their lien against Johnston, Hutt and Field, and Byrd, estop himself from afterwards setting up any title to the property in himself? He did not: he acted officially, and was in his own right no party to the decree. *Jackson vs. Griswold,* 4 *Hill* 528; *State Bank vs. Robinson et al.,* 13 *Arks.* 318 *et sep.; Douglas vs. Howland,* 24 *Wend.* 35; *Grant adm. vs. Ashley & Buchanan,* 7 *Eng.* 762; *Faulkner et al. vs. Thompson et al.* 14. *Ark.* 481; *Gardiner vs. Milling* 5 *Greenlf.* 140.

3. The lien of Farrelly's judgment was not postponed by return of the first execution issued thereon unexecuted by his order. *Wassell et al. vs. Watkins et al.,* 15 *Ark. Rep.* 90. *Trapnall vs. Richardson & Waterman,* 13 *Ark.* 551; *Rankin vs. Scott,* 12 *Wheat.* 177.

PIKE & CUMMINS, for the appellees.

The first question is as to the subrogation to the vendor's lien. Byrd sold to Hutt & Johnston, executed deed, and then, to get the purchase money, signed a joint and several note with them, for discount, on which he is still liable, or on the bill by which it was renewed, and to which also he was a party, which is the same thing.

Notwithstanding his deed, Byrd retained his lien. *Ross. vs. Whitson,* 6 *Yerger* 50. *Outtan vs. Mitchell,* 4 *Bibb* 239. *Eubank vs. Poston,* 5 *Monr.* 287. *White vs. Casanare,* 1 *Harr. & John.* 106. *Ghiselin vs. Ferguson,* 4 *id.* 522. *Graves vs. McCall,* 1 *Call* 414. *Galloway vs. Hamilton,* 1 *Dana* 576. *Hundley vs. Lyons,* 5 *Munf.* 342. *Wynne vs. Alston, Dev. Eq.* 163. *Henderson vs. Stewart,* 4 *Hawks* 256. *Watson vs. Wells,* 5 *Conn.* 468. *Greenup vs. Strong,* 1 *Bibb* 590. *Meek's Heirs vs. Eaby,* 2 *J. J. Marsh.* 339. *Voorhies vs. Sustone,* 4 *Bibb* 354. *Garson vs. Green,*

*J. C. R.* 308. *Bailey vs. Greenleaf,* 7 *Wheat.* 46, 50. *Warren vs. Van Alstyne,* 3 *Paige* 513. *Kennedy vs. Woolfolk,* 3 *Hayw.* 197. *Duval vs. Bibb,* 4 *Hen. & Munf.* 118. *Garson vs. Green,* 1 *J. C. R.* 308. *Cole vs. Scott,* 2 *Wash.* 141. *Brugess vs. Wheate,* 1 *W. Bla.* 150, *S. C.* 1 *Eden* 211. 2 *Story's Eq.* §§ 1217.

It makes no difference whether the estate is actually conveyed, or only contracted to be conveyed. 2 *Story's Eq.* § 1218. *Smith vs. Hubbard,* 2 *Dickens* 730. *McLeain vs. McLellan,* 10 *Peters* 625, 640. *Dodsley vs. Varley,* — 632, 633.

That lien is valid against the vendee, purchasers from him with notice, and all parties having notice that the purchase money has not been paid. *Clark vs. Hunt,* 3 *J. J. Marsh.* 557. *Roberts vs. Salisbury,* 3 *Gill & Johns.* 425. *Blight's Heirs vs. Banks,* 6 *Monr.* 198.

The assignee of a bond for the purchase money has a lien on the land, if the assignor had. *Kenney vs. Collins,* 4 *Litt.* 289. *Eubank vs. Poston,* 5 *Mon.* 287. *Eskridge vs. M'Clure,* 2 *Yerg.* 84. *Edwards vs. Bohannan,* 2 *Dana* 99. *Johnston vs. Gwathmey,* 4 *Litt.* 317.

Taking a security for the payment of the purchase money is not, of itself, a positive waiver or extinguishment of the lien. *Prima facie* the purchase money is a lien, and it lies on the purchaser to show that the vendor *agreed to waive it.* *Story's Eq.* § 1226, *and Notes.* *Mackreth vs Symmons,* 15 *Ves.* 342. *Nairn vs. Prowse,* 6 *Ves.* 759. *Garson vs. Green,* 1 *J. C. R.* 308. 4 *Kent* 152. *Hughes vs. Kearney,* 1 *Sch. & Lef.* 135. *Saunders vs. Leslie,* 2 *Ball & Beatt.* 514.

Taking bills of exchange, drawn on and accepted by a third person, or by purchaser and a third person, is not a waiver of the lien, but merely a mode of payment. *Hughes vs. Kearney,* 1 *Sch. & Lef.* 135. *Gibbons vs. Baddall,* 2 *Eq. Ab.* 682 n. *Grant vs. Mills,* 2 *Ves. & B.* 306. *Cooper vs. Spottiswoode, Taml.* 21. *Ex parte Peake,* 1 *Madd.* 349. *Ex parte Loaring,* 2 *Rose* 79. *Saunders vs. Leslie,* 2 *Ball & Beatt.* 514. *Winter vs. Lord Anson,* 3 *Russ.* 488.

The doctrine may be considered settled, that taking a note, bond or covenant of the vendee himself is no waiver of the lien.

.146 CASES IN THE SUPREME COURT

Shall as ad. et al. vs. Biscoe et al. [JULY

But taking a note, bill or bond, with a *distinct* security, or taking a distinct security exclusively by itself, either in the shape of real or person property, from the vendee, or taking the responsibility of a third person, *is* evidence that the vendor does not repose on the lien, but upon an independent security, and it discharges the lien? *Gilman vs. Brown*, 1 *Mason* 212. *Brown vs. Gilman*, 4 *Wheat.* 290. *Fish vs. Howland*, 1 *Paige* 20. *Stafford vs. Van Renssaellaer*, 9 *Cowen*, 316. 4 *Kent Com.* 151 *to* 153.

Was the bank entitled to be substituted to Byrd's lien?

The doctrine of substitution is one, principally, of recent growth in the English and American law. The first general principle on the subject is, that " if several persons are indebted and one makes payment, the creditor is bound in conscience, if not by contract, to give the party, paying the debt, all his remedies against the other debtors." *Stirling vs. Forrester*, 3 *Bligh* 590.

A surety paying the debt is put, under some circumstances, in the place of the creditor. So, if a surety has a counter bond or security for his principal, the creditor will be entitled to the benefit of it, and may in equity reach the security, to satisfy the debt. 1 *Story's Eq. sec's* 501, 502; *Hayes vs. Ward*, 4 *J. C. R.* 130; 1 *J. C. R.* 413; *Stevens vs. Cooper*, 1 *J. C. R.* 430; *Miller vs. Ord*, 2 *Binn.* 382; *Aldrick vs. Cooper*, 8 *Ves.* 388; *Ex parte Rushforth*, 10 *Ves.* 409. *Wright vs. Morley*, 11 *Ves.* 22; *Enders vs. Brune*, 4 *Rand.* 438.

The representatives of Walters cannot be heard to deny that the bank was entitled to the lien claimed by the bill of the trustees against Hutt, Johnston and Byrd. In that case the trustees, Walters included, expressly claimed such a lien from June, 1839, and that was a question to be adjudged in that case. The Court, with all the parties before it, upon contestation, and the point being directly in issue, expressly adjudged that such a lien did exist, and decreed its enforcement. That was *res adjudicata*, and Walters was forever concluded by it, being a party to the suit and expressly claiming that such should be the adjudication.

Of course, if Walters was concluded by the adjudication that

OF THE STATE OF ARKANSAS.

TERM, 1856.]      Shall as ad. et al. vs. Biscoe et al.

such a lien did exist, his representatives, as we~~ll~~ his devisees as his executor, are equally concluded. That i~~s a fundamental~~ principle, 1 *Greenlcaf* § 523.

And, if there was such a lien, as was adjudged at his instance, he was bound to know it, because as a trustee he must be presumed to have known the whole affairs of the Bank, with which it was his business to make himself acquainted, as well when he purchased, in 1843, then having been many months a trustee, as when he filed the bill alleging the lien.

Besides, if he claimed against the lien, he should have set up his claim in the suit which he aided to institute. Failing to bring it forward then, it is too late now.

A record is not held conclusive as to the truth of any allegations which were not material nor traversable; but as to things material and traversable, *it is conclusive and final.* The general rule was laid down with admirable clearness, by Lord Chief Justice DE GRAY, in *The Duchess of Kington's Cases*, 20 *Howell's St. Trials* 538, and has been repeatedly confirmed and followed, without qualification: especially in *Harvey vs. Richards*, 2 *Gall.* 229, and in *Hibsham vs Dulleban, Watts* 183.

That rule is: "That the judgment of a Court of concurrent jurisdiction, directly upon the point, is, as a plea, a bar; or, as evidence, conclusive, between the same parties, upon the same matter, directly in question in another Court." *Arnold vs. Arnold*, 17 *Pick* 9. *Cowen's Phillips, Notes* 557, 558, 561, 586–7–8.

A former judgment is not an *estoppel*. It is a bar to future recovery in any Court, on the same point, between the same parties and privies, until reversed; and as much a bar in chancery as at law. It is *res adjudicata*—and taken to be absolute and incontrovertible truth. *Killheffer vs. Herr*, 17 *Serg. & Rawle* 319. *Marsh vs. Pier*, 4 *Rawle* 273. *Lawrence vs. Hunt*, 10 *Wend.* 80.

The finding of a Chancery Court, as to a particular fact, is, though not a *bar*, yet *conclusive*, as *evidence*, in a subsequent suit between the same parties, at law, for a distinct object, of the facts found by the Chancellor. *Hopkins vs. Lee*, 6 *Wheat.*

109. *Betts vs. Starr*, 5 *Conn.* 550. *Coit vs. Tracy*, 8 *Conn.* 268. *Lessee of Wright vs. Deklyne*, 1 *Peters C. C. R.* 198, 202.

A judgment or decree is not only final as to the matter *actually* determined, but as to every other matter which the parties *might* have litigated in the cause. *Le Guen vs. Gouverneur*, 1 *J. Cas.* 436. A junior mortgagee, made a party to the bill of the elder, and neglecting to defend, will be barred. *Cooper vs. Martin*, 1 *Dana* 23. See also, *Grant vs. Button*, 14 *J. R.* 377. *Loomis vs. Pulver*, 9 *J. R.* 244. *White vs. Ward*, 9 *J. R.* 232.

While Walters held all the claim and title that he ever had, after he had purchased under execution, perhaps and probably buying the property for almost nothing, on account of this very claim of the Bank, he joins with his co-trustees in asserting, pleading and maintaining a lien upon it, paramount to his own and to all others. He neither prefers nor alludes to any claim of his own: He obtains a decree in favor of himself and his co-trustees, for the exclusive benefit of the Bank's creditors, recognizing and decreeing such paramount lien, and directing a sale of the property under it: at the sale he unites with his co-trustees in buying the property under the decree, pays the purchase money out of the funds of the Bank, and has a deed made to himself and his co-trustees. Again he files another bill, asserting another lien, obtains another decree, has another sale, and again purchases and takes deed to himself and his co-trustees. In the first suit and decree one lot was omitted, by mistake, as is apparent. He remedies that by the second bill, under which all the lots are sold; for after that sale and purchase the lien on lot 10, by subrogation to the vendor, united with the title obtained by decree and sale enforcing the lien of the levy; and yet it did not merge; but a Court of equity will keep the original lien separate from the after acquired title, if it were necessary in order to cut out Walters' intermediate claim. *James vs. Johnson*, 6 *J. C. R.* 423. *Starr vs. Ellis, id.* 395. *Preston on Merger* 212. *Duke of Chandon vs. Talbots*, 2 *P. Wms.* 604.

Among the many grounds on which these proceedings precluded any future claim on the part of Walters, or any person claiming under him by devise or descent, is the concealment of

his own title, and his silence in regard to it.   1 *Story's Eq.* 389; *Wendell vs. Van Rensselaer*, 1 *J. C. R.* 354; *Storrs vs. Barker*, 6 *id.* 166; *Bright vs. Boyd*, 4 *Story* 478.   1 *Story's Eq. sec.* 385; *Pickard vs. Sears*, 6 *Ad. & El.* 474.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

On the 7th of July, 1849, Henry L. Biscoe and others, residuary trustees of the *Real Estate Bank*, filed a bill in the Pulaski Circuit Court, against Thomas W. Newton, as executor of *Ebenezer Walters, deceased, John Hutt. John W. Johnston, Wm. Field, Richard C. Byrd, James Lawson, Francis Pitcher, Sackett J. Bennett, David J. Baldwin, Arthur Hays, Virginia Lemon* and *Ellen Lemon*, alleging, in substance, as follows:

On the 21st May, 1839, *Richard C. Byrd*, being the owner in fee, of lots 10, 11, 12, in block 1, East of the Quapaw line, Pope's addition of Little Rock, sold them to *John W. Johnston* and *John Hutt*, for $4,500, and by deed, executed by himself and wife, with general covenants of warranty, conveyed the lots to them, which deed was filed for record on the 24th of the same month, and is exhibited.

In payment for the lots, *Johnston* and *Hutt* made their note to Byrd for $4,500, dated 1st May, 1839, due at 8 months, negotiable and payable at the *Real Estate Bank*, which *Byrd* endorsed, and the Bank discounted on the 13th of June of the same year, paying to him the proceeds.

At the maturity of the note, in order to renew it, *Johnston* and *Hutt* (on the 4th January, 1840,) drew a bill in favor of Byrd, at six months, on the Canal and Banking Company, New Orleans, for $4,800, which Byrd and Robert W. Johnson endorsed, and the *Real Estate Bank* discounted, and applied the proceeds first to the payment of the note, and paid the residue to John W. Johnston.   The bill, at maturity, was protested for non-payment, etc.

The *Real Estate Bank* brought suit on the bill, in Pulaski Circuit Court, and on the 22d June, 1841, obtained judgment against *Hutt, John W. Johnston* and *Byrd* for the amount of the bill.   The *note, bill* and *judgment* are exhibited.

On the 2d April, 1842, the Bank made a general assignment of all her assets, including the judgment, and her lien upon the lots for the payment thereof, to trustees for the benefit of creditors: which is exhibited.

*Ebenezer Walters* became one of such trustees, by appointment under the deed, 3d of January, 1843, and acted as such, receiving pay for his services, until he died, 14th June, 1849.

On the 29th July, 1844, the franchises of the Bank were seized into the hands of the State, by judgment on *quo warranto* issued by this Court.

On the 2d January, 1845, the trustees of the Bank, including *Walters*, filed a bill on the chancery side of the Pulaski Circuit Court, against *Hutt, Johnston* and *Byrd*, to subject lots 11 and 12 to the satisfaction of the said judgment on the protested bill, (inadvertently omitting lot 10) claiming the benefit, by substitution, of *Byrd's* lien upon the lots, as vendor, for the purchase money. On the 9th of June, 1845, the trustees obtained a decree *pro confesso*, recognizing their claim, declaring the lien in their favor, as of the 13th June, 1839, and decreeing payment of the judgment by a day fixed, and on default, that lots 11 and 12 be sold, by David J. Baldwin, Commissioner, to satisfy the debt, etc. On the 27th Oct. 1845, the lots were sold under the decree, and purchased by the trustees, including *Walters*, for $55. On the 15th December following, the commissioner made his report of the sale to the Court; and executed a deed conveying the lots to the trustees, acknowledging it before the Court; and on the same day, it was filed for record, etc. The bill, decree, report of sale, and deed are exhibited.

That the omission of lot 10 in all of said proceedings, was a mere misprision of the attorney for complainants, caused by insufficient information afforded him by the trustees, and especially *Walters*, who was the resident trustee at Little Rock, and whose peculiar duty it was to attend to the enforcement of the lien and the collection of the debt, etc., etc.

On the 15th December, 1845, upon the application of the trustees, including *Walters*, the report of the commissioner was

approved, and the sale of the lots confirmed by the Court. The record of the confirmation is exhibited.

On the 3d of December, 1842, the Real Estate Bank recovered a judgment in Pulaski Circuit Court, against *John W. Johnston, John Hutt* and *Wm. Field*, for $2,070, debt, and interest, etc., which is exhibited.

On the 31st December, 1842, execution was issued on this judgment to the Sheriff of Pulaski, returnable to March term, 1843, which, on the day it was issued, was levied on said lots 10, 11 and 12, as the property of *Johnston* and *Hutt*, who claimed the benefit of the appraisement act then in force, and the lots failing to sell for two thirds of their appraised value, the *fi. fa.* was returned with the facts endorsed. The execution and return are exhibited.

On the 25th of September, 1844, after the assignment of the Bank, and after her charter had been seized upon *quo warranto*, the trustees, including *Walters*, filed a bill in Pulaski Circuit Court against *Johnston, Hutt* and *Field*, for the payment of this judgment, and the enforcement in equity of the lien and levy aforesaid, by sale of the lots, etc. The bill, etc. is exhibited.

On the 19th April, 1837, *John W. Onstott*, administrator of *Kirkwood Dickey*, recovered a judgment in Pulaski Circuit Court, against *John Hutt* and *Wm. Field* for $56 debt, and $3 62 damages, and costs. On the 31st of May, 1844, the judgment was revived on *scire facias*, and the lien thereof continued, etc. On the 14th of August, 1844, a *fi. fa.* issued on the revived judgment, to the Sheriff of Pulaski, which, on the same day, was levied on all the interest of *John Hutt*, in and to the undivided half of said lots 10, 11 and 12, and other lands; which were sold under the execution on the 21st of April, 1845, and purchased by Wm. Field for $15; who received the Sheriff's deed therefor, on the 7th of May of the same year; which, on the 31st of that month, was acknowledged before the Court, and filed for record on the 16th of June following, etc. The original judgment, judgment of revivor on *scire facias*, execution, return, deed, etc., are exhibited.

On the 18th August, 1845, an *alias fi. fa.* was issued to the

Sheriff of Pulaski, on the same judgment, levied on the same interest of *John Hutt* in said lots, which was sold on the 21st of October, 1845, and purchased by Walters for $26, who, on the 16th December following, obtained the Sheriff's deed therefor, acknowledged in open Court, etc., and filed for record afterwards, etc. The deed is exhibited.

On the 24th Oct., 1845, the trustees of the Bank obtained a decree on their bill against *Johnston, Hutt* and *Field*, ordering payment of the balance due on the judgment, that the three lots be charged with a lien therefor, as of 3d December, 1842, and that they be sold for the satisfaction thereof, etc. The lots were sold under the decree on the 27th April, 1846, purchased by the trustees, including Walters, for $45, who obtained the commissioner's deed therefor, duly acknowledged, ete., and recorded, etc. The report of the sale was approved and confirmed by the Court on the day the sale was made. The decree, deed, report and confirmation of sale, etc., are exhibited.

On the 12th Nov. 1840, *Terence Farrelly* obtained a judgment in Pulaski Circuit Court against *Hardy Jones* and *John W. Johnston*, for $150 debt, $17 20 damages and for costs. On the 17th January, 1842, a *fi. fa.* was issued on the judgment, returnable to March term following, which was returned without action, by order of the plaintiff. On the 28th April, 1843, another *fi. fa.* was issued on the judgment to the Sheriff of Pulaski county, returnable to May term following, which was levied on the interest of *John W. Johnston*, in the three lots. There was a sale thereof on the 29th May, 1843, and Walters became the purchaser for $30, as he in his lifetime pretended, but complainants aver that there was really no sale, and that no deed was executed to him under the pretended sale, until the 16th January, 1846, more than a year after the Sheriff, Lawson, had gone out of office, and nearly three years after the pretended sale. The deed of Lawson to Walters for *Johnston's* interest in the lots, bearing that date, acknowledged in open Court, etc., and also the judgment, *fi. fa's.* and returns are exhibited.

Walters was trustee of the Bank under the deed of assignment, from 3d January, 1843, until 14th June, 1849, when he

died, having made a will, appointing Newton his executor, and devising the residue of his estate, after the payment of his debts, and a specific legacy to his mother, to Frances Pitcher, and Virginia and Ellen Lemon.

The executor of Walters, and the two devisees last named being the only defendants who appealed from the decree of the Court below, the allegations of the bill charging the other defendants with liability for rents, etc., etc., need not be stated.

The bill insists that the lien of the Onstott judgment had expired long before the *sci. fa.* issued to revive it, and that the lien of the judgment of revivor dated only from the time it was rendered, (31st May, 1844.) That, though the *Farrelly* judgment was rendered, 12th Nov. 1840, no execution issued thereon until the 17th January, 1842, more than a year and a day, and having been returned by order of the plaintiff without action, no other execution issued until 28th April, 1843, more than another year and day, whereby, in any event, the lien of the judgment was postponed, etc. That, after Walters purchased Johnston's interest in the lots under the *Farrelly* judgment, May 29th, 1843, (long before which, he was a trustee for the Bank,) and before he purchased Hutt's supposed interest, (21st Oct. 1845,) he, with his co-trustees, filed the two bills aforesaid, one against *Johnston, Field* and *Hutt*, on the 25th Sept, 1844, and the other against *Johnston, Hutt* and *Byrd*, 2d January, 1845; in the former of which he and his co-trustees claimed a lien on the lots, as of 3d December, 1842, and in the latter, a lien by substitution for purchase money, as of 21st May, 1839, and prosecuted both bills to decree, establishing the liens as claimed, and as in truth they did exist.

The bill prays that the pretended liens of defendants be canceled, and the title of complainants to the lots quieted, and for an account of rents, etc.

Newton, as the executor of Walters, answered the bill. He admits that the papers and records referred to in the bill are correctly stated, and that the facts proved by them are true; and admits the truth of all the allegations of the bill, except such as are specially denied, etc.

11

He cannot state whether the omission of the attorney of the trustees to include let 10 in the bill filed by him, claiming for the trustees the benefit of Byrd's lien on the lots for the purchase money, by subrogation, was occasioned by the neglect of Walters, or not. The trustees having full confidence in their attorney, it was not customary for them to superintend the prosecution of suits, examine records in relation to liens, or to give the attorney information in respect to such matters, unless called upon by him, etc., but all such matters were peculiarly under his management. For these reasons, respondent does not believe that Walters had any knowledge of the claim of the trustees upon said lots, before he purchased the interest of Johnston therein, under the *Farrelly* judgment. But even if he had, respondent insists that he purchased under a lien prior and paramount to the pretended claim of the trustees; and such being the case, it was not a breach of trust or violation of duty in him to make such purchase, particularly as he did it for the purpose of partially indemnifying himself for large sums which he had before then paid as the security of Johnston, who was insolvent, etc.

Respondent insists that Byrd having made an absolute conveyance of the lots to Hutt and Johnston, was not entitled to any lien thereon for the purchase money, as against a stranger or third parties, and consequently the Bank could not be subrogated to any such rights as against a purchaser under the judgment of *Farrelly*.

Respondent does not insist that Walters obtained any title by his purchase of Hutt's interest in the lots, under the *Onstott* judgment, but insists that by his purchase of *Johnston's* interest, under the *Farrelly* judgment, he became the owner of one undivided half of said lots as against complainants, and all other persons.

Respondent avers that a sale was in fact made to *Walters* under the execution upon the *Farrelly* judgment, at the time, place and in the manner recited in the sheriff's deed exhibited with the bill. He admits that no deed was made to Walters, under his purchase, until 16th January, 1846, as stated in the

bill, but he avers that such delay was not intentional or design-ed, but a mere omission and oversight; and as the sale was returned upon the execution, he is unable to perceive how any one could be prejudiced by the delay.   Respondent was inform-ed and believed that Walters was under the impression that a deed had been made in pursuance of said sale during the return term of the execution, as was the custom of the sheriff, and as soon as he was apprised of the omission, he caused the deed referred to in the bill to be executed, acknowledged and re-corded.

Respondent admits that no execution issued on the Farrelly judgment until the 17th January, 1842, and that it was returned without action by order of the plaintiff therein; and that none other issued until 28th April, 1843, under which Walters pur-chased; but he insists that, as said sale was made within three years from the date of the judgment, the lien thereof was not waived, or postponed by such delay.

The cause was heard upon bill and exhibits, answer of New-ton, replication, and an agreement of the parties, that Walters had to pay upwards of $1,500 as security of Johnston upon a note executed in 1840, and that Johnston had been insolvent since the year 1841; and that the object of Walters, in purchas-ing Johnson's interest in the lots, was partially to indemnify himself from loss on account of money so paid for Johnston, etc. The Court decreed the relief sought by the bill, that the titles of defendants be canceled, and the title of complainants to the lots quieted, etc., and referred the case to the master to take an account of rents, etc.

Newton, and Virginia and Ellen Lemon appealed from the decree.

Afterwards, Newton died, and SHALL was made a party, as administrator, etc., of Walters.

The appellants claim no title under the *Onstott* judgment; but they insist that Walters purchased a valid title to *Johnston's* undivided half of the three lots, under the *Farrelly* judgment. This judgment was rendered 12th Nov., 1840, and Walters pur-chased under it 29th May, 1843.   By Statute, (*Dig. ch. 93, sec.*

5,) the lien of a judgment commences on the day it is rendered, and continues for three years, subject to be revived by *scire facias*, (*Ib. sec.* 8 *to* 13.) The *Farrelly* judgment was the oldest *record* lien upon the lots, at the time Walters purchased, and he purchased before the expiration of the three years, and whilst the lien of the judgment was in full force.

It is insisted by the appellees, however, that the lien of the *Farrelly* judgment was postponed by his laches. That the lien of the judgment obtained by the Bank against *Johnston*, *Hutt* and *Field*, 3d December, 1842, was continued and made specific by the levy upon the lots made 31st December, 1842, under the execution issued on this judgment; and that inasmuch as the execution upon the *Farrelly* judgment under which *Walters* purchased, did not issue until the 28th April, 1843, the lien of the judgment was waived and postponed by the return of the first execution, without action, upon the order of *Farrelly*.

But, this point has heretofore been adjudged against the appellees in *Trapnall vs. Richardson et al.*, 13 *Ark*. 551, and *Watkins et al. vs. Wassell*, 15 *Ark*. 90. In the case last cited, Mr. JUSTICE WALKER, delivering the opinion of this Court, said: " The statute continues the lien of the judgment creditor for three years, unless displaced by some act of the party. Mere delay to sue out process within the time would not of itself be sufficient for that purpose; nor would the levying of process, and an order by the creditor, or his attorney, to return the process without selling the property, or to return process before it had been levied, necessarily discharge the judgment lien. Such acts do not amount to an abandonment of the lien, or a release of the property, etc." These decisions are sustained by *Rankin et al. vs. Scott* 12*th Wheat R*. 177.

The appellees also insist upon the following propositions:

1st. The Bank was subrogated to the lien of Byrd upon the lots for the purchase money.

2. As Walters so claimed as one of the trustees of the Bank, and on that ground obtained a decree and sale, he was thereby estopped to deny it, and could not controvert a decree obtained by himself asserting and recognizing that lien.

OF THE STATE OF ARKANSAS. **157**

Term, 1856.]                Shall as ad. et al. vs. Biscoe et al.

3d. Walters, as one of the trustees, purchased the property twice for the creditors of the Bank, after he had purchased for himself, each time bidding, and, by giving credit on the decrees, paying away their money, for the title, or supposed title obtained by such purchase, and taking deeds to himself and cotrustees—he cannot, therefore, set up his previous title, even supposing it otherwise good.

1. Was the Bank subrogated to the vendor's lien?

It is very well settled in England, and in most of the States of this Union, that, in equity, the vendor of land has a lien for the purchase money, not only against the vendee himself, and his heirs and other privies in estate, but also against all subsequent purchasers having notice that the purchase money remains unpaid. The lien exists, although there be no special agreement for that purpose, and notwithstanding the vendor conveys the land by deed, and takes the note or bond of the vendee for the purchase money. To the extent of the lien the vendee becomes a trustee for the vendor and his heirs, etc., and all other persons claiming under him, with such notice, are treated as in the same predicament. The principle upon which Courts of equity have proceeded in establishing this lien, in the nature of a trust, is, that a person who has gotten the estate of another ought not, in conscience, as between them, to be allowed to keep it, and not pay the full consideration money. And third persons, having full knowledge that the estate has been so obtained, ought not to be permitted to keep it, without making such payment, for it attaches to them, also, as a matter of conscience and duty. It would otherwise happen that the vendee might put another person in a predicament better than his own, with full notice of all the facts. *Mackreth vs. Symmons*, 15 *Vesey* 329. *Sugden on Vendors*, 856, 7th *American Edition, and notes.* 4 *Kent's Com.* 152. 2 *Story's Equity, sec.* 789, 1219, 1221, 1224, 1225. 1 *Leading Cases in Equity, by White & Tudor, Notes by Hare and Wal., marg. p.* 174 *et seq., and cases cited. Manly et al. vs. Slason et al.,* 21 *Verm.* 271, where the English and American cases are cited.

The same doctrine has been recognized in the Circuit and

158        CASES IN THE SUPREME COURT

Shall as ad. et al. vs. Biscoe et al.                    [July

Supreme Courts of the United States. *Gilman vs. Brown et al.*,
1 *Mason* 192; *same case*, 2 *Wheat.* 255. *Bayley vs. Greenleaf et
al.*, 7 *Ib.* 46. *Pintard vs. Goodloe et al.*, *Hempstead's C. C. R.*
503.

It was also recognized by this Court in *Moore & Cail admrs. vs.
Anders*, 14 *Ark. R.* 634, though Mr. CHIEF JUSTICE WATKINS, who
delivered the opinion, seems not to have been very favorably
impressed with the doctrine. Treating of the lien retained by
the vendor, who has executed his bond to make title to the ven-
dee on payment of the purchase money, he says: " The lien re-
served to the vendor, by means of such contracts, has none of
the *odious characteristics* of the vendor's equitable lien for the
unpaid purchase money, where having conveyed the legal title,
acknowledging the receipt of the purchase money, he ought not
to be heard to assert it against any subsequent purchaser or in-
cumbrancer, without clear and unequivocal proof of actual
notice."

There being no showing of any agreement to the contrary,
in the record before us, it follows that, notwithstanding *Byrd*
conveyed the lots in question to *Hutt* and *Johnston*, by deed,
and took their joint note for the purchase money, he retained
an equitable lien upon the lots for the payment of the purchase
money, not only against them, but all subsequent purchasers,
etc., with full notice, etc.

The note was made to Byrd, but negotiable and payable at
the Real Estate Bank, and upon Byrd's endorsement, the Bank
discounted the note, and paid to him the proceeds: Was the
Bank subrogated to his lien upon the lots, for the payment of
the note?

In *Moore & Cail, ad'rs vs. Anders*, this Court held that where
the vendor does not convey the land by deed, but gives the ven-
dee a bond to make him a title on payment of the purchase
money, for which the vendee's note is taken, the vendor has a
lien upon the land, in the nature of a mortgage, for the pay-
ment of the note; and that an assignment of the note transfers
the lien to the assignee, as an incident to the debt. But where
the vendor conveys the land by deed, taking the vendee's note

for the purchase money, the CHIEF JUSTICE said: " The weight of authority no doubt is, that the equitable lien of the vendor is personal to him, and is not, unless under some peculiar equitable circumstances, assignable. We decline going into any such question, because it is not presented here, and is only noticed by way of contrast with the description of lien under consideration."

The question which the Court declined going into in that case, comes directly before us in this.

In *Pollexfen vs. Moore*, 3 *Atk*. 272, LORD HARDWICK is reported to have stated, that the lien of the vendor does not prevail for the benefit of a third person; yet his decree was, that a legatee in that Court was entitled to the benefit of the lien of the vendor. In *Selby vs. Selby*, 4 *Russell* 336, the MASTER OF THE ROLLS held, notwithstanding the *dictum* of LORD HARDWICK in *Pollexfen vs. Moore*, that where the purchaser died, and the vendor was paid the purchase money out of the personal assets of the deceased, the simple contract creditors of the purchaser stood in the place of the vendor with respect to his lien on the estate sold, against a devisee of the estate. These cases, however, are not directly to the point in question, nor have we been able to find an English decision directly in point.

The American decisions are very much in conflict.

KENTUCKY—The assignee of the note or bond for the purchase money, takes with it, all the lien which the vendor had upon the land, etc. *Eubank vs. Poston*, 5 *Monroe* 286. *Edwards vs. Bohannon*, 2 *Dana* 98. *Johnston vs. Gwathany*, 4 *Littell* 317. *Kinney vs. Collins Ib.* 289. *Honore's Exr. vs. Bakewell et al.*, 6 *B. Monroe* 68. *Ripperdon vs. Cozine*, 8 *Ib*. 465. In some of these cases the vendor had made the vendee a deed; in others a bond for title, but no distinction is made between the cases in regard to the lien passing to the assignee with the note, etc.

ALABAMA follows Kentucky. But if the vendor assigns the note, *without recourse upon him*, the lien does not pass to the assignee. And where the lien passes by the assignment, and the note is returned to the vendor unpaid, he may enforce the lien. *White vs. Stover et al.*, 10 *Ala*. 441; *Roper vs. McCook*, 7

*Ib*. 319; *Hall's Ex. vs. Click et al.*, 5 *Ib*. 363; *Kelly vs. Payne*, 18 *Ala*. 373.

INDIANA follows Kentucky also. *Brumfield et al. vs. Palmer*, 7 *Blackford* 227; *Lagow et al. vs. Badollet et al.*, 1 *Ib*. 416. But, in these cases, the vendors did not make deeds to the vendees, but covenanted to convey on payment of the purchase money.

TEXAS. In *Pinchain vs. Collard*, 13 *Texas* 333, the Court, citing some of the authorities on both sides of the question, declines to express any opinion as to whether the mere transfer of the note or bond given for the purchase money, passes the vendor's lien; but holds that where a third person is substituted for the vendor as payee in a note, given, as expressed on its face, for the purchase money, he will be entitled to the vendor's lien. To some extent, *Dayden vs. Frost*, 3 *Mylne & Craig*, 670, sustains this decision.

TENNESSEE. In *Eskridge vs. McClure et al.*, 2 *Yerger* 84, the vendor made a deed to the purchaser, and took his bond for the purchase money, upon the face of which it was expressed that the land should be liable for the debt; and it was held that the assignee of the bond had, in equity, the same lien that his assignor, the vendor, had. In *Claiborne vs. Crockett*, 3 *Yerger* 27, where the vendor gave a bond for title, and took the vendee's note for the purchase money, it was held that the mere assignment of the note did not transfer to the assignee the benefit of the vendor's lien. In *Garm vs. Chester et al.*, 5 *Yerger* 205, the vendor made a deed to the vendee, and took his notes for the purchase money; and it was held that an assignment of the notes did not transfer, but extinguished the lien. So, too, in *Sheratz vs. Nicodemus*, 7 *Yerger* 9. In *Graham vs. McCampbell*, *Meig's Rep.* 52, *Claiborne vs. Crockett* was overruled, and it was held that where the vendor gives his bond for title, and takes the note of the vendee for the purchase money, the vendor retains a lien upon the land, in the nature of a mortgage for the payment of the debt, and that an assignment of the note by him, transfers to the assignee, as an incident to the debt, the lien upon the land; but where the vendor conveys the land by deed, taking the vendee's note for the purchase money,

OF THE STATE OF ARKANSAS. 161

TERM, 1856.]                Shall as ad. et al. vs. Biscoe et al.

the lien is personal to the vendor, and is not transferred by an assignment of the note. In *Green et al. vs. Demoss et al.*, 10 *Humphries* 371, this distinction was approved and confirmed; and it was held that where the vendor has conveyed the land by deed, the lien is a mere personal, equitable right in him, and not assignable; but that the assignment of the vendee's note does not, *ipso facto*, extinguish the vendor's lien; but if he is made liable upon his endorsement, or the note is returned to him unpaid, his lien revives.

MISSISSIPPI—Holds, as finally held in Tennessee, that where there is a bond for title, the vendor's lien follows the note for the purchase money into the hands of an assignee. *Parker vs. Kelly et al.*, 10 *Sm. & Mar.* 184. But where the vendor has conveyed the land, his lien does not pass by the assignment of the note. *Briggs et al. vs. Hill*, 6 *Howard* 362.

GEORGIA—Holds that, upon principle, the vendor's equitable lien is not assignable. But if it were, it must be assigned specially. It does not follow the simple transfer of the note for the purchase money. *Wellborn et al. vs. Williams et al.*, 9 *Geo. R.* 86, 92.

IOWA: " The assignee of a note given for the purchase money of land, cannot in equity enforce the original lien of the vendor against the land. The equity arises to the vendor, but cannot be transferred." *Dickinson vs. Chase et al.*, 1 *Morris R.* 492.

OHIO: The vendor's lien is personal, and does not pass to the assignee of a note given for the purchase money. *Jackman vs. Hallock et al.*, 1 *Ohio* 318; *Tiernan vs. Beam et al.*, 2 *Ib.* 383; *Bush et al. vs. Kinsley et al.*, 14 *Ib.* 20; *Horton vs. Horner, Ib.* 437. In these decisions, no distinction is taken between cases where the vendor gives bond for title, and where he conveys by deed.

MARYLAND. In *Schnebly et al. vs. Ragan*, 7 *Gill. & John.* 124, the Court seems to have inclined to the opinion that the assignee might get the benefit of the vendor's lien by express agreement; but held that where the vendor assigned the note

for the purchase money, *without recourse upon him*, the lien was extinguished, being personal to the vendor.

In *Inglehart vs. Armiger*, 1 *Bland* 519, and *Moreton vs. Harrison, Ib.* 491, held, that the assignment of the note for the purchase money operates as a tacit relinquishment of the vendor's lien, and it can never be revived, unless he is made liable as assignor. *Maryland Digest, p.* 685.

NEW YORK. In *White vs. Williams*, 1 *Paige R.* 506, CHANCELLOR WALWORTH held, that the lien of the vendor did not pass, by implication, to the assignee of the note for the purchase money, but intimates that it might be transferred by special agreement. In *Hallock vs. Smith*, 3 *Barbour's S. C. R.* 272, STRONG, J., said: "If the note or bond (for the purchase money) is assigned or transferred to a third person for his benefit, the security (the lien of the vendor) is gone forever. The reason is, there is no peculiar equity in favor of third persons. But that does not apply where, as in this case, the transfer is only for the purpose of paying the *debt of the vendor*, so far as it may be available, and is, *therefore, for his benefit.* There, the equity continues."

It would seem from the cases cited above, that the weight of authority is, that where the vendor conveys the land by deed, taking the note of the vendee for the purchase money, a mere assignment of the note does not transfer to the assignee the benefit of the vendor's lien upon the land for the payment of the purchase money.

In the case now before us, the Bank seems to have taken the note, upon the endorsement of *Byrd*, in the ordinary course of business. There is no allegation in the bill that she contracted for the lien of the vendor, or looked to it as a security, when she discounted the note.

If the Bank had been subrogated to the lien of Byrd, by his endorsement of the note to her, whether she lost the benefit of the lien by taking a bill of exchange, endorsed by *Robert W. Johnson*, in payment of the note, as insisted by the appellants— or whether the lien of *Farrelly's* judgment was superior to the lien of the vendor, the judgment having been obtained before

the Trustees filed their bill to get the benefit of Byrd's lien— or whether, and to what extent, Walters was affected with notice of the vendor's lien, when he purchased the lots under the judgment—are questions which need not be determined, as we have decided that the Bank was not subrogated to the benefit of the vendor's lien.

2. The *second proposition* insisted on by the appellees is, that, inasmuch as Walters, as one of the Trustees of the Bank, claimed that the Bank was subrogated to the benefit of the vendor's lien, and, on that ground, obtained a decree and sale of the lots, he was thereby estopped to deny it, and could not controvert a decree obtained by himself, asserting and recognizing that lien.

" The general rule on this subject was laid down with admirable clearness, by Lord Chief Justice De Grey, in the Duchess of Kingston's case (20 *How. ll's State Trial's* 538) and has been repeatedly confirmed and followed, without qualification— ' From the variety of cases, said he, relative to judgments being given in evidence in civil suits, these two deductions seem to follow, as generally true; first, that the judgment of a court of concurrent jurisdiction, directly upon the point, is, as a plea, a bar; or, as evidence, conclusive, between the same parties, up-- on the same matter, directly in question in another Court; secondly, that the judgment of a Court of exclusive jurisdiction, directly upon the point, is, in like manner, conclusive upon the same matter, between the same parties, coming incidentally in question in another Court for a different purpose. But, neither the judgment of a concurrent nor exclusive jurisdiction is evidence of any matter which came collaterally in question, though within their jurisdiction; nor of any matter incidentally cognizable; nor of any matter to be inferred by argument from the judgment.' 1 *Greenleaf's Ev. sec.* 528, *et seq. Hibsham vs. Dulleban*, 4 *Watts* 190; *Harvy vs. Richards*, 2 *Gallison* 216; *Trammell et al. vs. Thurmond et al.*, 17 *Ark.*

The bill upon which the decree was rendered, which is relied on as an estoppel by the appellees, was filed by the Trustees of the Bank, including Walters, against *Hutt, Johnston & Byrd*.

The object of the bill was to obtain satisfaction of the judgment which the Bank had obtained against them, on the protested bill, taken by her in payment of the original note for the purchase money, etc. The Trustees claimed in that suit that the Bank should be subrogated to the benefit of Byrd's lien upon the lots, and obtained a decree to enforce the lien as against *Hutt* and *Johnson*, who had purchased the lots, but never paid for them, and as against *Byrd* who held the lien, etc.

But, in the mean time, and before the bill was filed, Farrelly had obtained a judgment, which was a lien on *Johnston's* interest in the lots, and Walters had purchased under the judgment, and the bill and decree in no way determined whether the lien of Byrd could prevail against the intervening lien of Farrelly's judgment, and against the title of *Walters* as a purchaser under the judgment. These questions were not before the Court, and were not decided; and, as to them, the decree, under the above rule, could not be regarded as an adjudication, operating as an *estoppel* upon Walters.

3d. But after Walters had purchased Johnston's interest in the lots, he, with his co-trustees, filed two bills to fix liens upon the lots, and enforce the satisfaction of judgments upon them, dating back of his purchase; obtained decrees, caused the lots to be sold, and purchased in the name of the Trustees, took deeds from the commissioners, had the sales confirmed by the Court and the deeds put on record; in each case making the purchase with the means belonging to the *cestui que trusts* under the deed of assignment. While all these legal steps were being taken in his name, Walters appears to have remained silent as to his own claim, with a full knowledge, as we must suppose from the record before us, of his rights.

We cannot presume, from the pleadings and evidence in the cause, that Walters was ignorant of the legal proceedings taken in his name to enforce the claims of the Trustees upon the lots. It was his duty, as a Trustee, receiving compensation for his services, under the provisions of the trust deed, to attend to the collection of the debts, etc., of the Bank. He resided in Little Rock, where the Court was held, in which the bills were filed,

OF THE STATE OF ARKANSAS. **165**

Term, 1856.]          Shall as ad. et al. vs. Biscoe et al.

the decrees obtained, and where the lots were sold and purchased in his name, after being advertised in the public newspapers. Was he acting in good faith as a Trustee, to remain silent as to his own claim, and join with his co-trustees in putting the trust to the expense of prosecuting all the proceedings above referred to, and then to turn about and set up a personal claim which he had permitted to sleep in the meantime, for the purpose of defeating the title which he had aided in procuring for the benefit of the creditors interested in the trust? Can he, or those holding under him, and standing in his place, be heard in a court of equity to assert his title against the title of the Trustees, under all the facts and circumstances disclosed in the record before us? We think not.

If a man, having a title to an estate, which is offered for sale, and knowing his title, stands by and encourages the sale, or does not forbid it; and thereby another person is induced to purchase the estate, under the supposition that the title is good, the former, so standing by, and being silent, will be bound by the sale; and neither he, nor his privies, will be at liberty to dispute the validity of the purchase in equity. 1 *Story's Equity* sec. 385; *Danley vs. Rector*, 5 *Eng. R.* 212.

By the strongest analogy, the conduct of Walters in this case operates as an estoppel upon him and his privies in estate.

The decree of the Court below is affirmed.

Absent, the Hon. Thomas B. Hanly.